**Shirley CEARLEY, Petitioner,**

v.

**Robert L. CEARLEY, Respondent.**

**No. B–6051.**

Supreme Court of Texas.

Dec. 15, 1976.

Mitchell, George & Belt, Terry L. Belt and Arthur Mitchell, Austin, for petitioner.

Bolton & Bolton, Michelle B. Bolton, Cedar Park, for respondent.

Donald R. Smith, Dallas, and Reba Graham Rasor, Raggio & Raggio, Inc., Dallas, amicus curiae, for petitioner.

DANIEL, Justice.

This is a divorce case in which the only remaining question concerns the propriety of the trial court granting the wife a fractional interest in future military retirement benefits if and when received by the husband.

Prior to the divorce on June 3, 1975, Robert L. Cearley had served for 19 years

as an enlisted man in the Air Force, during which period he and Shirley had been married for 18 years. Robert was to have completed the 20 years necessary for receipt of retirement benefits on May 7, 1976, and his enlistment at the time of the divorce extended to August 31, 1976.

The trial court ordered that "If and when Robert L. Cearley . . . retires and receives a retirement benefit . . . then, and in such an event, the Petitioner [Shirley Cearley] is to receive one-half (½) of 18 of the fraction of the number of years of active service until retirement . . ." The Court of Civil Appeals reversed and rendered only that portion of the judgment awarding the wife a share of the contingent retirement benefits. Tex.Civ.App., 536 S.W.2d 96. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the trial court.

The Court of Civil Appeals held that the trial court was without authority to order division of the husband's prospective military retirement benefits because no vested interest had been acquired therein at the time of the judgment. We have jurisdiction under Section 2 of Article 1728 [1] because the above decision is in conflict with the decision of the Court of Civil Appeals in *Miser v. Miser*, 475 S.W.2d 597 (Tex.Civ. App.1971, writ dism'd), on a question of law material to a decision of this case.

### Military Retirement Pensions Earned During Coverture Are Community Property

■ Section 5.01 of the Family Code provides that community property consists of the property, other than separate property, acquired by either spouse during marriage. A spouse's separate property consists of the property acquired by the spouse by gift, devise or descent. Despite an earlier view that retirement and pension plans were gifts bestowed by benevolent employers on retiring employees, they are now regarded as a mode of employee compensation earned during a given period of employment. The earlier view was rejected in *Lee v. Lee*, 112 Tex. 392, 247 S.W. 828 (1923), in the following language construing a corporate employee's benefit:

"It was in no sense a donation to the employe for individual merit, but was manifestly additional compensation for faithful and continuous service. It was as much a fruit of his labors as his regular wages or salary. It was in the strictest sense a 'gain' added to the common acquests of the marital partnership, as the direct result and fruit of his labor and services."

■ It is now well established that matured private retirement, annuity, and pension benefits earned by either spouse during the marital relationship are part of the community estate and thus subject to division upon dissolution of the marriage. *Herring v. Blakeley*, 385 S.W.2d 843 (Tex.1965); Hughes, "Community Property Aspects of Profit-Sharing and Pension Plans in Texas—Recent Developments and Proposed Guidelines for the Future," 44 Tex.L.Rev. 860 (1966).

The same characterization of community property was first given to military retirement benefits by this Court in *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970), which approved a holding in *Kirkham v. Kirkham*, 335 S.W.2d 393 (Tex.Civ.App.1960, no writ), that "the military retirement pay account was not a gift or gratuity but an earned property right which accrued to him by reason of his years in military service; the military retirement pay account was earnings of the husband during marriage, and as such, community property." This Court also cited with approval similar holdings in *Mora v. Mora*, 429 S.W.2d 660 (Tex.Civ.App. 1968, writ dism'd); *Webster v. Webster*, 442 S.W.2d 786 (Tex.Civ.App.1969, no writ); *LeClert v. LeClert*, 80 N.M. 235, 453 P.2d 755 (1969); *Morris v. Morris*, 69 Wash.2d 506, 419 P.2d 129 (1966). Other cases with similar holdings are *Ables v. Ables*, 540 S.W.2d 769 (Tex.Civ.App.1976, no writ); *Freeman v. Freeman*, 497 S.W.2d 97 (Tex.

---

1. All citations to statutes refer to Vernon's Annotated Texas Civil Statutes, unless otherwise noted. For the applicable Federal statutes, see 10 U.S.C. §§ 8911–8929 (1959 and supp.).

Civ.App.1973, no writ); and *Miser v. Miser*, 475 S.W.2d 597 (Tex.Civ.App.1971, writ dism'd).

### Future Pension Benefits As Contingent Community Property Rights

While the status of military pension benefits earned during marriage is now firmly established as community property, the decisions in this and other community property States have differed as to whether the pension payments must have vested or matured before they are subject to apportionment by a divorce court, or whether future contingent payments may be apportioned "if, as, and when" they mature and are received by the retired spouse. The argument of the husband, and the holding of the Court of Civil Appeals in the instant case, is that the power of the divorce courts to "order a division of the estate of the parties" does not apply to future military retirement benefits because they have not been "acquired" or vested during the marriage. Sections 3.63 and 5.01, Texas Family Code (1975).

For such contingent or inchoate rights to reach the status of assets of the estate of the parties, the Court of Civil Appeals held that "all events [must] have occurred which fix the liability of the government" to pay retirement benefits, adding: "The conditions must be such as would entitle the claimant [husband] to institute an action, if necessary, for a money judgment." This is a more rigid requirement than has been found in any other case or writing on the subject.[2] It comes nearer to the rule of *French v. French*, 17 Cal.2d 775, 112 P.2d 235 (1941), which plagued the California courts until the Supreme Court of California reversed itself in *Brown v. Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). The *French* case, *supra*, involved the wife's claim to a community interest in a portion of the prospective retirement pay of her husband, an enlisted man in the Fleet Reserve, payable if and when he completed additional years of service. The California Supreme Court held that this "nonvested" pension right was a mere "expectancy" and thus not a community asset subject to division upon dissolution of a marriage. Reliance on the date of collectibility as the inception of contingent pension rights earned during coverture was soon recognized to be inconsistent with basic community property principles. The *French* decision led to much criticism and attempts by lower California courts to find reasons for distinguishing the case and extending community property protection to unmatured retirement benefits.[3]

We shall quote at length from *Brown v. Brown, supra*, because of the California Supreme Court's long and careful study of the community property aspects of the question which now faces this Court:

"Upon reconsideration of this issue, we have concluded that *French v. French* should be overruled and that the subsequent decisions which rely on that precedent should be disapproved. As we shall explain, the *French* rule cannot stand because nonvested pension rights are not an expectancy but a contingent interest in property; furthermore, the *French* rule compels an inequitable division of rights acquired through community effort. Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset subject to division in a

---

2. Compare the following Texas cases which do agree with the concept of nonvesting of property rights in the community estate until the officer or enlisted man has served the full time required for retirement. *Bright v. Bright*, 531 S.W.2d 440 (Tex.Civ.App.1975, no writ); *Lumpkins v. Lumpkins*, 519 S.W.2d 491 (Tex. Civ.App.1975, writ ref'd, n. r. e.); *Davis v. Davis*, 495 S.W.2d 607 (Tex.Civ.App.1973, writ dism.).

3. See Article, *The Identification and Division of Intangible Community Property: Slicing the Invisible Pie*, 6 U.C.Davis L.Rev. 26 (1973); Note, *Retirement Pay: A Divorce in Time Saved Mine*, 24 Hastings L.J. 347 (1973). In overruling the above mentioned holding in *French*, the California Supreme Court said in *Brown v. Brown, supra*, that it had sought two years earlier to reconsider "the current viability of the rule of *French v. French*."

dissolution proceeding. [15 Cal.3d at 843, 126 Cal.Rptr. at 634, 544 P.2d at 562]

\* \* \* \* \* \*

"We conclude that *French v. French*, and subsequent cases erred in characterizing nonvested pension rights as expectancies and in denying the trial courts the authority to divide such rights as community property. This mischaracterization of pension rights has, and unless overturned, will continue to result in inequitable division of community assets. Over the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. . . .

"The present case illustrates the point. Robert's pension rights, a valuable asset built up by 24 years of community effort, under the *French* rule would escape division by the court as a community asset solely because dissolution occurred two years before the vesting date. . . . [15 Cal.3d at 847, 126 Cal.Rptr. at 638, 544 P.2d at 566]

\* \* \* \* \* \*

"In dividing nonvested pension rights as community property the court must take account of the possibility that death or termination of employment may destroy those rights before they mature. In some cases the trial court may be able to evaluate this risk in determining the present value of those rights. (See *De-Revere v. DeRevere, supra,* 5 Wash.App. 741, 491 P.2d 249; *Thiede,* op.cit., *supra,* 9 U.S.F.L.Rev. 635, 654.) But if the court concludes that because of uncertainties affecting the vesting or maturation of the pension that it should not attempt to divide the present value of pension rights, it can instead award each spouse an ap-

propriate portion of each pension payment as it is paid. This method of dividing the community interest in the pension renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest." [15 Cal.3d 848, 126 Cal.Rptr. at 639, 544 P.2d at 567]

This method of apportioning prospective unmatured military retirement benefits as part of the community estate had been approved by Texas and New Mexico courts several years earlier. *Mora v. Mora,* 429 S.W.2d 660 (Tex.Civ.App.1968, writ dism'd); *Webster v. Webster,* 442 S.W.2d 786 (Tex. Civ.App.1969, no writ); *Miser v. Miser,* 475 S.W.2d 597 (Tex.Civ.App.1971, writ dism'd); *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969). In those cases the pension benefits had not matured at the time of divorce because the husbands had not retired. Although all but Miser had served the number of years required for their pension benefits to have accrued,[4] all were still on active duty when their marriages were dissolved; they had not received the required honorable discharges; neither had they met other contingencies enumerated by the Court of Civil Appeals in the instant case as being necessary for such contingent benefits to be apportioned as part of the community estate. Yet, in each of those cases apportionment of the unmatured retirement benefits was ordered or approved if, as, and when received in the future by the prospective retiring spouse, just as the trial court ordered in the instant case. The *Mora, Webster* and *LeClert* decisions were cited with approval by this Court in *Busby v. Busby,* 457 S.W.2d 551 (Tex.1970), which affirmed a partition of matured military benefits, with the wife's portion to be paid "if, when, and as" the benefits were paid to the husband.

*Miser v. Miser, supra,* was the first reported case in this State to apply the above method of apportionment to military retire-

---

4. The term "accrued," *as* used in this opinion, means only that the minimum number of years required for military pension eligibility has been served. It is thus intentionally distinguished from the term "matured," which de-

notes that all requirements have been met for immediate collection and enjoyment, and from "vested," which frequently has been used as though synonymous with both of the other terms.

ment benefits which had neither accrued nor matured when the marriage was dissolved. The facts were very similar to those in the present case. At the time of the divorce the enlisted man had served approximately eighteen and one-half years in the Air Force, with his current enlistment extending nearly a year beyond the date when he was eligible for retirement. His marriage and his military service coincided for approximately 170 months. The trial court awarded the wife ½ of 170ths "of the number of months Harvey S. Miser has served or attained at the time of retirement . . .," if and when he retires and receives a military retirement benefit or pension. The husband made the same arguments against that portion of the divorce decree which are urged in the instant case. In *Miser,* the Court of Civil Appeals, in a well-reasoned opinion, found no difficulty in applying the rule announced in *Mora, Webster,* and *LeClert* to the contingent unmatured benefits. It affirmed the award of the fractional amount to the wife "when, if and as the payments are eventually made to [the] appellant husband."[5]

### Apportionment As Contingent Property Interest

While the status of unaccrued and unmatured military retirement benefits earned wholly or partially during marriage is a question of first impression for this Court, we believe that most of the objections to their treatment as a contingent property interest were anticipated and answered by this Court in *Busby v. Busby, supra.* For instance, the husband there argued that he never possessed a "property right" in his disability retirement benefits during the marriage; that they were a mere expectancy, because he had not retired prior to the divorce, and the rights were subject to forfeiture by death or dishonorable discharge prior to his retirement. These arguments were overruled. The Court held that the benefits were community property at the

time of the divorce even though they had not matured and were not at that time subject to possession and enjoyment. As heretofore indicated, the Court cited with approval the decisions in *Mora, Webster,* and *LeClert, supra,* which held that the contingencies merely made such benefits subject to non-maturity or divestment. It was held that the fact that the benefits were subject to divestment under certain conditions did not reduce the benefits to a "mere expectancy." See also *Nail v. Nail,* 486 S.W.2d 761, 762 (Tex.1972). Even the dissent in *Busby,* which objected to the recognition of matured retirement benefits as vested property rights, stated that the court granting the divorce "[can] and should take it [retirement benefits] into consideration" in exercising its broad powers under Article 4638 [Section 3.63 of the Family Code], to the end that an order might be entered "that is just and equitable under the circumstances," citing *Mora v. Mora, supra,* and *Kirkham v. Kirkham, supra.*

In *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965), this Court held that profit sharing and retirement plans may be classed as community property even though none of the funds were available or subject to possession at the time of the divorce. The Court said: "Community rights may exist in interests that cannot be reduced to possession, such as remainder or reversion rights." A similar analogy was made in *Brown v. Brown, supra,* with respect to the community interest in a contingent fee earned during the marriage but which had not matured at the time of the divorce. See *Waters v. Waters,* 75 Cal.App.2d 265, 170 P.2d 494 (1946). Although a serviceman's military pension is not payable before the date of its maturity, it is not "earned" on that day. Rather it is a form of deferred compensation which is earned during each month of his military service. *LeClert v. LeClert, supra.* The portion that he

5. Subsequently, the same court reached a different result in *Davis v. Davis,* 495 S.W.2d 607 (Tex.Civ.App.1973, writ dism'd), by an immaterial distinction as to retirement rights and procedures applicable to officers. See footnote 2, supra, for two other cases which followed *Davis,* and which are hereinafter disapproved insofar as they are in conflict with this opinion.

earned during the months of coverture became contingent earnings of the community which may or may not bloom into full maturity at some future date. We hold that such rights, prior to accrual and maturity, constitute a contingent interest in property and a community asset subject to consideration along with other property in the division of the estate of the parties under Section 3.63 of the Family Code.

Any other decision would result in an unnecessary multiplicity of suits. The present case is a good example. The trial court has properly settled the matter in the divorce judgment if, as, and when the retirement benefits mature. It was shown at the trial that the husband was to have completed the 20 years necessary for accrual of his retirement benefits on May 7, 1976, with the possibility of maturity at the end of his current enlistment on August 31, 1976. It is possible that either or both of these events have occurred. If the trial court were reversed on the basis set forth by the Court of Civil Appeals, then Shirley Cearley, in order to obtain her share of the benefits which were earned during the marriage, would have to file a second lawsuit against Robert Cearley for partition thereof after the date that the retirement benefits mature.

The bench and the bar were cautioned by this Court in *Busby v. Busby, supra,* to inquire as to the existence of insurance or retirement programs in all divorce suits "to the end that the final judgment fully disposes of all property valuables of the community." Pension and retirement benefits have become an increasingly significant part of the consideration earned for military, governmental, and private services, sometimes being of the principal asset accumulated by the community. *Brown v. Brown, supra; Kirkham v. Kirkham, supra.* The administration of justice will best be served if contingent interests in retirement benefits are settled at the time of the divorce, even though it may be necessary in many instances for the judgment to make the apportionment to the nonretiring spouse effective if, as, and

when the benefits are received by the retiring spouse. We approve this method of apportionment and award of contingent interests in military retirement benefits because of the uncertainties affecting the accrual and maturity of such benefits. This method will forego the difficulty of computing a present value and will fairly divide the risk that the pension may fail to mature.

The three Court of Civil Appeals opinions referred to in footnotes 2 and 5, *supra, Bright v. Bright,* 531 S.W.2d 440; *Lumpkins v. Lumpkins,* 519 S.W.2d 491; and *Davis v. Davis,* 495 S.W.2d 607; are disapproved insofar as they conflict with this opinion.

The judgment of the Court of Civil Appeals in this case is reversed and the judgment of the trial court is affirmed.