**Mable Jo GROST, Appellant,**

v.

**Frank H. GROST, Appellee.**

**No. 1053.**

Court of Civil Appeals of Texas, Tyler.

Dec. 29, 1977.

Rehearing Denied Feb. 2, 1978.

Reba Graham Rasor, Raggio & Raggio, Inc., Donald R. Smith, Dallas, for appellant.

Shannon Jones, Jr., Jerry C. Alexander, Passman, Jones, Andrew Coplin, Holley & Co., Dallas, for appellee.

MOORE, Justice.

This is a divorce case with the principal issue on this appeal being whether the trial court abused its discretion in dividing the community property between the parties. Appellee, Frank H. Grost, instituted suit against his wife Mable Jo Grost, appellant, seeking a divorce on "no fault" grounds of insupportability, and for a division of the estate of the parties. Mrs. Grost answered and filed a cross-action seeking a divorce on the grounds of cruelty and adultery. After a bifurcated trial, of which part was tried before a jury and part before the court without a jury, judgment was entered dissolving the bonds of matrimony and dividing the property. Appellant, Mable Jo Grost, being dissatisfied with the property division, duly perfected this appeal.

We affirm.

Sec. 3.63 of Tex.Rev.Civ.Stat.Ann., The Texas Family Code, requires the court, upon granting a divorce, to order a division of the estate of the parties in a manner that the court deems just and right.

The trial court filed extensive findings of fact and conclusions of law. Based on such findings, as well as other findings made by the jury, the trial court divided the property as follows:

| Wife | | | Husband | | |
|---|---|---|---|---|---|
| **ASSETS:** | | | | | |
| 1. | Home | 31,881.39 | 10. | Land | 15,000.00 |
| 2. | Securities | 28,680.82 | 11. | Securities | 52,152.31 |
| 3. | Cash | 83,901.04 | 12. | Cash | 61,115.93 |
| 4. | Automobile | 5,225.00 | 13. | Automobile | 3,000.00 |
| 5. | 24 acres of land (less tax liability) | 142,000.00 | 14. | One-half cash value of life policies | 2,455.22 |
| 6. | Cash value wife's life ins. policy | 2,559.41 | | | |
| 7. | One-half cash value of husband's life policies | 2,455.22 | 15. | Partnership loan acct. | 11,120.24 |
| | | | 16. | Partnership capital acct. | 55,300.00 } 1 |
| | TOTAL | $296,702.88 | | | $200,143.70 |
| **CONTINGENT INTEREST:** | | | | | |
| 8. | 20% husband's retirement | 35,371.50 | 17. | 20% retirement | 35,371.50 |
| 9. | 50% husband's death and disability benefits | 88,428.75 | 18. | 50% death disability | 88,428.75 |
| | TOTAL | $123,800.25 2 | | | $123,800.25 |

---

1. The trial court found that neither of these items had any value; however, we have concluded that they should have been assigned the values as set forth in the above schedule as will be discussed later.

2. The trial court also awarded each party 50% of the $500.00 per month retirement benefits commencing when the husband reaches the age of 75.

Under her first point of error appellant asserts that the trial court erred in awarding the wife one-half of only 40% of the husband's vested retirement benefits. The trial court found that 40% of the husband's retirement benefits had vested, amounting to $70,743.00, and awarded appellant one-half of that amount or 20% of the total benefits. Appellant argues that such award made by the trial court was not in conformity with the procedural requirement for the division of such property as laid down in *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.Sup.1976). We are not in accord with this proposition.

In the findings of fact the trial court found that Frank H. Grost had acquired, during the marriage of the parties, certain death, disability and retirement benefits as a partner in the partnership known as Alford, Meroney & Company; that the present value of the death and disability benefits under the terms of the partnership agreement with Alford, Meroney & Company for death and disability was $176,857.50, which sum was payable to Frank H. Grost or his estate in One Hundred Twenty (120) monthly payments of $1,473.81 each; that the partnership agreement provides that 50% of retirement benefits in a like sum (100% being $176,857.50) vests on June 30, 1977, and that 5% (of $176,857.50) vests on June 30th thereafter for 10 succeeding years. The court further found that as of June 1, 1976, only 40% of the retirement benefits had vested in Frank H. Grost by reason of his employment with Alford, Meroney & Company, and that all retirement benefits vesting thereafter should be the sole and separate property of Frank H. Grost. The court further found 40% of the retirement benefits was acquired by the parties during their marriage and accordingly awarded each party 20% thereof.

The portion of the judgment dividing the retirement, death and disability benefits reads as follows:

"IT IS, ACCORDINGLY, FURTHER ORDERED, ADJUDGED AND DE-CREED by the Court that Mable Jo Grost is awarded as her sole and separate property, and Frank H. Grost is hereby divested of all right, title, and interest in and to the following property:

One-half (½) of the first $589.52 ($589.52 being 40 per cent of $1,473.81), said one-half (½) being $294.76, IF, AS, and WHEN paid by Alford, Meroney & Company as retirement benefits for Frank H. Grost under the terms of the Partnership Agreement with Alford, Meroney & Company; and

One-half (½) of the amount of $1,473.81 of each monthly payment, IF, AS and WHEN paid by Alford, Meroney & Company as disability benefits for Frank H. Grost under the terms of the Partnership agreement with Alford, Meroney & Company; and

One-half (½) of the amount of $1,473.81 of each monthly payment, IF, AS and WHEN paid by Alford, Meroney & Company as death benefits for the estate of Frank H. Grost under the terms of the Partnership Agreement with Alford, Meroney & Company; and

One-half (½) of each monthly payment of $500.00, IF, AS, and WHEN paid as a retirement benefit for Frank H. Grost under the terms of the Partnership Agreement with Alford, Meroney & Company, beginning at the 75th birthday of Frank H. Grost."

The record reveals that the parties had been married for thirty-one years, during which time Mr. Grost had been employed as a partner in the accounting firm of Alford, Meroney & Company. In 1969 the company adopted a plan for the payment of certain benefits upon death, disability or retirement by its employees. The death, disability and retirement plan was unfunded and constituted nothing more than a mere promise on the part of the company to pay the benefits out of earnings. The amount of the benefits was based upon the earnings and length of tenure of the employees. The allotment of the death, disability and retirement benefits to Frank H. Grost amounted to $176,857.50. The funds were to be disbursed monthly in the manner described in the court's judgment. Under the terms of

the plan no employee was permitted to retire until June 30, 1977, and only then if he had reached the age of 55. The judgment of divorce was dated July 16, 1976. Thus, at the time of the divorce, Mr. Grost was required to work one more year with the company before he would be entitled to retire and receive 50% of his retirement income. Consequently, less than 50% of the retirement benefits were earned during coverture. After June 30, 1977, the remaining 50% promised him under the plan could only be earned at the rate of 5% a year by his continuing to work for the company for the next ten years. Thus, the remaining 50% of the retirement funds would be earned after the date of divorce and, of course, would not constitute community property acquired during the marriage.

 In Texas, disability retirement benefits resulting from employment during marriage are community property subject to division between the husband and wife in the event of dissolution of the marriage. *Busby v. Busby*, 457 S.W.2d 551, 554 (Tex. Sup.1970); *Herring v. Blakeley*, 385 S.W.2d 843, 846 (Tex.Sup.1965). That portion of the retirement benefits earned during coverture constitute community property at the time of divorce, even though they had not matured and were not at the time subject to possession and enjoyment. *Busby v. Busby, supra.* Such portion of the retirement benefits earned during coverture constitute a contingent interest in property and are community assets subject to division under Sec. 3.63 of the Texas Family Code. *Cearley v. Cearley*, 544 S.W.2d 661, 666 (Tex.Sup.1976).

 In support of her first point of error appellant argues that the *Cearley* decision, supra, has explicitly disapproved division of retirement benefits on the basis of "vesting," and therefore the court erred in finding that 40% of the benefits had vested. The *Cearley* decision indeed held that such benefits need not be vested, in the sense of matured, before they can be considered community assets subject to division. However, it is clear that the trial court, in finding that 40% of the retirement benefits

had "vested," was using that term in the sense of "earned," which is the expression found in *Cearley.* As something less than 50% of the retirement benefits were earned by the husband as of the date of the divorce, we believe that the court's finding that 40% of the benefits were "vested," or "earned," during coverture was in conformity with the correct procedural requirement for the division of such property as laid down in *Cearley.*

In order to effect an equitable division of the property of the parties, it has long been the law that the court may award all or part of either spouse's community personal property to the other. *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923). The trial court was authorized by sec. 3.63 of the Family Code to order a division of the property in a manner that the court deems just and right. We hold that the trial court did not err in awarding appellant one-half of 40% of the husband's retirement benefits. Appellant's first point is overruled.

By her second point of error, appellant contends that the trial court erred in excluding the testimony of Matalee Webster wherein she offered to testify that she intended to give 1,000 shares of stock in Lakewood Acres, Inc., to her niece, Mrs. Grost, and did not intend to give any part thereof to Frank H. Grost. In reply, appellee urges that, even if the ruling were erroneous, the error was harmless, since it did not cause the rendition of an improper judgment.

A brief history of this particular transaction is in order. The record reveals that in 1963, while Mr. Grost was at home recovering from a heart attack, Matalee Webster, Mrs. Grost's aunt, became fearful that the family did not have sufficient funds. She went to Mrs. Grost's home, taking with her a 1,000-share stock certificate which represented the entire ownership of Lakewood Acres. The record does not show what conversation, if any, took place with regard to the stock certificate, except for the fact that Matalee Webster testified that Mr. Grost told her to sign the stock certificate and that he would take care of it. While it

appears that the stock certificate was signed by her, it was not made a part of the record. By way of a bill of exception, appellant offered the proffered testimony of Matalee Webster showing that she would testify that she intended to give the 1,000-share stock certificate solely to her niece, Mrs. Grost.

The record shows that Mrs. Grost became president of Lakewood Acres, Inc., and Mr. Grost became Secretary. The evidence shows that the principal asset owned by the corporation was approximately 27 acres of unimproved land situated in Grapevine, Texas. Mr. Grost testified that at that time the land had a value of approximately $20,000.00. The record shows that the parties subsequently purchased three acres of the land from the corporation with community funds, which was accounted for in Item 11 of the community property schedule depicted supra. Thereafter, the parties improved the land by subdividing it in lots and constructing streets thereon. On May 31, 1971, Mrs. Grost, as president of Lakewood Acres, Inc., caused the 1,000-share stock certificate to be cancelled and issued her and her husband 500 shares each of the corporate stock. On the same date they entered into an agreement whereby the corporate stock was sold to Gary Kirkland, trustee, for and in consideration of $267,-832.25. It was agreed by the parties at that time that the corporation would be dissolved by Kirkland and that he would then execute a note and deed of trust to them payable in installments over a ten-year period and that the lien would represent the sole security for the transaction. The note as well as the deed of trust was executed to Mr. & Mrs. Grost jointly. The corporation was subsequently dissolved and at the time of trial the parties were the joint owners of the vendor's lien note and the deed of trust lien upon the 24 acres of land. Although several payments were made on the note, at the time of trial repossession was eminent, and the value placed on the land as shown in Item 5 of the foregoing property schedule represented the market value of the land in the event it was repossessed.

By virtue of sec. 5.02 of the Texas Family Code, all property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Sec. 5.01 of the Family Code provides that community property consists of the property, other than separate property, acquired by either spouse during marriage, and that a spouse's separate property consists of the property acquired by the spouse during marriage by gift, devise or descent. The general rule is that property acquires its status as separate or community property of the husband and wife at the time of its acquisition. *Lindsay v. Clayman*, 151 Tex. 593, 254 S.W.2d 777 (1952); *Carriere v. Bodungen*, 500 S.W.2d 692 (Tex.Civ.App.—Corpus Christi 1973, no writ).

In an effort to rebut the presumption that the 1,000-share stock certificate was community property, appellant caused Special Issue No. 8 to be submitted to the jury which inquired as to whether Mrs. Webster made the gift of the 1,000 shares of stock solely to Mrs. Grost as her separate property. The jury answered in the negative.

We think the testimony was admissible to show that Matalee Webster intended to give the stock solely to her niece. *Dunham v. Chatham*, 21 Tex. 231 (1858); *Foster v. Christensen*, 67 S.W.2d 246 (Tex.Com.App. 1934); see 27 Tex.Jur.2d Gifts, sec. 51 at 192. It was therefore error for the court to have excluded it. However, an error committed by the trial court in excluding testimony with regard to whether certain property is separate or community will not result in a reversal unless the record, as a whole, shows that the error was calculated to cause and probably did cause the complaining party to receive less than his or her fair share of the total value of the community estate. Rule 434, Tex.R.Civ.P.; *Cooper v. Cooper*, 513 S.W.2d 229, 233 (Tex.Civ. App.—Houston [1st Dist.] 1974, no writ).

Under the record before us we fail to see how the error resulted in harm to appellant. Even if we assume that the 1,000 shares of stock were her separate property by reason of a gift from her aunt, the undisputed

facts show that she later executed a stock certificate giving her husband 500 shares of the stock. At that point a presumption arose that she made a gift to her husband of one-half of the stock. *Carriere v. Bodungen, supra.* Nowhere in her pleading or proof does she seek to establish that this transaction was not a gift. It has long been the law that one spouse may make a valid gift of his or her separate property to the other spouse. *Riley v. Wilson*, 86 Tex. 240, 24 S.W. 394 (1892); *Bohn v. Bohn*, 455 S.W.2d 401 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ dism'd). Thus, at the time of trial Mr. Grost owned one-half of the vendor's lien note received in exchange for his 500 shares of stock as his separate property and Mrs. Grost owned only a one-half interest therein as her separate property. The trial court awarded Mrs. Grost the entire value of the vendor's lien note in the amount of $142,000.00 as shown by Item 5 of the above schedule, thereby divesting Mr. Grost of his separate one-half interest therein, about which he makes no complaint. Thus, assuming arguendo, that this item of property was initially her separate property, in view of the fact that she subsequently gave her husband one-half of it, the error resulted only in the court's failure to set aside to her one-half of the value of the vendor's lien note in the amount of $71,000.00 as her separate property. Consequently, the net effect of the error was to reduce the total assets awarded her by the sum of $71,000.00. The error, however, could not have resulted in harm to her, because, even after deducting the $71,000.00 from the total assets received by her, she still received assets totalling $225,702.88 as compared to assets of the value of $200,143.70 received by her husband. Thus, the error in excluding the testimony of Matalee Webster did not cause the rendition of an improper judgment. Rule 434, Tex.R.Civ.P. Her second point of error is overruled.

In the third, fourth and fifth points appellant contends that the court erred in finding that the net value of the husband's partnership investment accounts, after the payment of Federal Income Taxes, would be negligible or amount to a deficit. She contends that such finding has no support in the evidence or, in the alternative, that it is against the overwhelming weight and preponderance of the evidence. In her argument under these points she contends that at the time of trial the husband's interest in the partnership had a value in excess of $100,000.00 and that the award of these accounts to him resulted in his receiving more than his fair share of the community property.

The record in regard to the partnership accounts is somewhat complicated. As we understand the testimony, Mr. Grost had a required capital account in the partnership of $55,300.00 as of June 30, 1975, the last date on which the partnership's books were closed. He also had a loan account on that date in the amount of $82,120.24. The latter amount represented his share of the billings made by the partnership to its customers which had not been collected. While the loan account represented his share of the earnings as of that date, such accrued earnings would not be paid to him until collected since the partnership kept books on a cash basis. Thus, as of June 30, 1975, his total interest in the partnership accounts amounted to $137,420.24. The record shows that during the marriage the parties had borrowed the sum of $71,000.00 from the partnership against the loan account. After deducting the amount of the loan the net loan account amounted to $11,120.24. The trial court awarded Mr. Grost the loan account, as well as the capital account in the amount of $55,300.00, but found that after the payment of income taxes the value of these accounts would be negligible. We find no probative evidence to support this finding. While some part of these accounts would no doubt be subject to income taxes, there is no probative evidence as to the amount thereof. Accordingly, we think the court should have treated the partnership interest awarded to Mr. Grost as community assets as we have shown under Items 16 and 17 on the above property schedule. The error, however, in refusing to assign any value to these items resulted in no harm to appellant, since even

including the value of these items as a part of the estate awarded the husband, appellant nevertheless received assets exceeding those awarded to the husband. Rule 434, Tex.R.Civ.P. Points three, four and five are accordingly overruled.

Next, appellant complains of the action of the trial court in refusing to award her ownership of any interest in the several life insurance policies acquired during marriage insuring the life of her husband. She argues that the policies, as such, constitute property which was acquired during the marriage and that therefore she had a right to receive as a community asset an ownership interest in the policies. We cannot agree with this proposition.

The record shows that during the marriage the parties acquired a life insurance policy on the wife in the face amount of $10,000.00 and acquired several policies on the husband in the face amount of $116,-487.00. Three of the husband's policies totalling $80,000.00 were term policies and therefore had no cash surrender value. The trial court awarded the wife her policies together with the entire amount of the cash surrender value on her policy and also one-half of the cash surrender value of the policies carried on the husband as shown in Items 6 and 7 of the above property schedule. The court awarded the husband his policies together with one-half of the cash surrender value of such policies.

Appellant makes no complaint with regard to the division of the cash surrender values on the policies. Her complaint is that the court should have additionally awarded her title to or an ownership interest in the husband's policies. She argues that in awarding the husband title to his policies in the face amount of $116,487.00 as compared to the award to her of only her $10,000.00 policy, the court made an unfair distribution of the community assets represented by the policies.

■ It is well settled that the cash surrender value of life insurance policies acquired during marriage constitutes community property and such is generally regarded as the proper basis for settlement of the rights of the parties on termination of the marriage. *Womack v. Womack*, 141 Tex. 299, 172 S.W.2d 307 (1943); *Berdoll v. Berdoll*, 145 S.W.2d 227 (Tex.Civ.App.—Austin 1940, writ dism'd w. o. j.); *Locke v. Locke*, 143 S.W.2d 637 (Tex.Civ.App.—Beaumont 1940, no writ); *Russell v. Russell*, 79 S.W.2d 639 (Tex.Civ.App.—San Antonio 1935, writ dism'd); Simpkins, Texas Family Law, sec. 5:69, at 359 (5th Ed. 1975).

■ One of the first steps which the courts must undertake in making an equitable distribution of the community property is to determine the value to be accorded each piece of property owned by the community estate. In cases involving life insurance the question arises as to what value is to be accorded to the policies. Some life insurance policies have value while others do not. For example, a policy acquired during marriage and providing for a cash surrender value has a value to the community estate to the extent of the community funds used to create the cash surrender value. Also, in situations in which all of the premiums on a life insurance policy are paid in one lump sum with community funds during the marriage, the full amount of the insurance coverage constitutes contingent community property accruing on the death of the insured. *Cox v. Cox*, 304 S.W.2d 175 (Tex.Civ.App.—Texarkana 1957, no writ). Where the policies do not provide for a cash surrender value and amount to nothing more than a mere contract between the insured and the insurer whereby the insured promises to pay a stipulated premium for a stipulated period of time for and in consideration of the payment of a stipulated sum upon death, the insurance contract, as such, has no value.

■ In the present case there is no evidence that any of the policies in which appellant seeks ownership had any value other than their cash surrender value. Thus, while the policies themselves may have been technically owned by the community, after the division of their cash surrender value the policies, as such, had no value and therefore did not constitute community

assets to be divided between the parties. Consequently, we find no merit in appellant's contention that the trial court should have awarded her an ownership interest in the policies on the husband's life rather than merely dividing the cash surrender value thereof.

In any event, we sincerely doubt that the trial court would have been authorized to alter the insurance contracts by transferring ownership of the policies or a part thereof to appellant, without the insurance company's having been made a party to the suit. See *Russell v. Russell, supra*. The sixth point is overruled.

In her final point of error appellant contends that the court abused its discretion in awarding her less than one-half of the property of the parties. We find no merit in this contention.

The primary duty of the trial court in dividing the estate of the parties is to make a division that is fair, just and equitable. On appeal from a judgment dividing property of the parties, the question is whether or not the trial court abused its discretion, and, if so, whether such abuse requires a reversal of the judgment. It is the duty of the appellate court to indulge every reasonable presumption in favor of the trial court's exercise of its discretion, which may be corrected on appeal only when such abuse of it is shown that the disposition made of the estate was manifestly unjust, unfair and inequitable. *Roye v. Roye*, 404 S.W.2d 92 (Tex.Civ.App.—Tyler 1966, no writ). As we view the record appellant was awarded property having a value slightly in excess of one-half the total value of the community estate. Consequently, we have concluded that no abuse of discretion was shown.

Finding no reversible error the judgment of the trial court is affirmed.