**Roberto D. PEREZ, Appellant,**

v.

**Marian S. PEREZ, Appellee.**

**No. 16022.**

Court of Civil Appeals of Texas, San Antonio.

Dec. 13, 1978.

Rehearing Denied Jan. 24, 1979.

M. M. Pena, Jr., San Antonio, for appellant.

Patrick K. Sheehan, Cox, Smith, Smith, Hale & Guenther, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Roberto D. Perez, defendant below, appeals from a judgment ordering him to pay to his former wife, Marian S. Perez, plaintiff, a portion of the military readjustment pay "if, as and when" he receives such pay under the provisions of 10 U.S.C. § 687 (1975).

The parties were married on March 9, 1963, at which time defendant was a first lieutenant in the United States Army Reserve. On April 1, 1964, defendant was called to active duty. The parties were divorced on August 25, 1970, after being married for seven years and six months, but the divorce decree made no reference to the readjustment pay benefits.

Defendant, who had attained the rank of major, was involuntarily released, effective October 3, 1977, at which time he had been on active duty for 16½ years. Six years and five months of such active duty were rendered by defendant while he and plaintiff were married. This suit was filed by plaintiff on September 13, 1977. Plaintiff claims that the defendant's right to readjustment pay was, in part, an asset of the community estate of the parties and that since such asset was not disposed of by the decree of divorce, she and defendant owned interests in the readjustment benefits as tenants in common.

Title 10 of U.S.C. § 687(a) provides that a reserve officer who is involuntarily released from active duty and who has completed, immediately prior to his release, at least five years of continuous active duty, "is entitled to a readjustment payment computed by multiplying his years of active service . . ., but not more than eighteen, by two months' basic pay of the grade in which he is serving at the time of his release." The statute then provides that such involuntarily released reserve officer may not be paid "more than two years' basic pay of the grade in which he is serving at the time of his release or $15,000.00, whichever amount is the lesser." The parties agree that the amount of readjustment pay receivable by defendant under the statute is $15,000.00.

Defendant claims that the trial court erred in awarding plaintiff an interest in the readjustment benefits because such benefits were never "vested" prior to the time that the parties were divorced, but, instead, were "contingent" because they were not due and payable until defendant was involuntarily released from active duty, and then only if he had completed five years of continuous active duty immediately prior to his involuntary release. For these reasons, defendant contends that the decisions holding that military retirement benefits are community property when the right to receive such benefits is derived from service during the marriage are not applicable. We disagree.

Defendant's reliance on *In re Howe*, 381 F.Supp. 1025 (N.D.Fla.1974), is misplaced. The court in that case was considering the propriety of an order of the bankruptcy court requiring the bankrupt to turn over to the trustee in bankruptcy military readjustment pay received by the bankrupt after the petition in bankruptcy was filed. Under the provisions of 11 U.S.C. § 110 (1953), as interpreted by the court in *Howe*, title to property of the bankrupt passes to the trustee only if the bankrupt's title was vested at the time the petition in bankruptcy was filed. We are not here concerned with the correctness of this interpretation, but need only point out that *Howe* held that the readjustment pay was not payable until the bankrupt was involuntarily released from the United States Marine Corps; because such release did not occur until after the filing of the petition in bankruptcy was

filed, the bankrupt's right to readjustment pay was contingent at the time of filing of the petition, and therefore, remained the property of the bankrupt. 381 F.Supp. at 1026–27.

We need not evaluate the propriety of the conclusion reached in *Howe* which was that the right to receive readjustment pay is "contingent" and not "vested" prior to the date of the reservist's involuntary release. The esoteric distinctions between "vested" and "contingent" or "nonvested" rights are irrelevant to the determination of whether a right will be considered as part of the assets of the community estate. The argument that "contingent" or "inchoate" rights cannot be considered as part of the assets of the community estate until all events have occurred which irrevocably fix the liability of the government to pay the benefits was rejected by the Supreme Court of Texas in *Cearley v. Cearley*, 544 S.W.2d 661, 663–664 (Tex.1976). In rejecting the contention that only earned or vested rights can be considered community assets, the Supreme Court said: "We hold that such rights, prior to accrual and maturity, constitute a contingent interest in property and a community asset subject to consideration along with other property in the division of the estate of the parties . . . ." Id. at 666.

The opinion in *Howe* expresses the view that readjustment pay constitutes "severance" pay and cannot be considered "a lump sum payment for earned military retirement." 381 F.Supp. at 1026. Again, there is no occasion to agree or disagree with such conclusion, since the characterization of a right as community or separate does not depend on the label used by the court in referring to the benefits flowing from such right.

The cases dealing with military retirement benefits, such as *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977), *Cearley*, 544 S.W.2d 661 (Tex.1976), *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970), and *Mora v. Mora*, 429 S.W.2d 660 (Tex.Civ.App.—San Antonio 1968, writ dism'd.), furnish no support for the contention that the characterization of

retirement benefits as community assets rested on the fact that the benefits in question were retirement benefits. In *Brown v. Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976), the Supreme Court of California said: "Pension rights, whether or not vested, represent a property interest; to the extent that such rights derive from employment during coverture, they comprise a community asset . . . ." This portion of the *Brown* opinion received the stamp of approval of the Texas Supreme Court in *Cearley*. See 544 S.W.2d at 663.

The decisive factor is that, whatever the nature of the benefits involved, the right to receive them has been earned, in whole or in part, by rendition of services during coverture. To the extent that the right rests on services rendered during coverture, that right is the fruit of what must be considered as community effort.

The legislative history of the military readjustment pay statute reveals that its purposes are to induce reservists to remain on active duty and to aid reservists who are involuntarily released upon their re-entry into civilian life. S.Rep.No.2288, 84th Cong., 2nd Sess. 585, *reprinted in* [1956] U.S.Code Cong. & Admin.News, p. 3061. Part of the justification for the legislation providing for readjustment pay was stated as follows:

> So long as our national policy requires reservists on active duty to augment the regular forces, *some compensation* to these reservists in readjusting to civilian life seems a justifiable element of the cost of national defense. A part of the justification for the bill flows from the *obligation* to treat these reservists fairly; at the same time, significant benefits may accrue to the Government. . . . Capable Reserve officers, in the knowledge that they will be eligible for readjustment pay if involuntarily released, should have an increased feeling of security and should be more likely to remain on active duty for extended periods."

*Id.* at 3062 (emphasis added).

The statute itself states that the involuntarily released reservist "is entitled to a

readjustment payment" computed in the manner prescribed in the statute. 10 U.S.C. § 687(a) (1975). The portion of the Senate Report quoted in the preceding paragraph speaks of "compensation" and refers to the "obligation" of the government. Thus, there is no basis for concluding that the readjustment pay constitutes a gift by the United States. The right to the readjustment pay is earned during each month of military service. The portion which defendant earned while married to plaintiff must be considered as having been earned by the community.

In *Howe*, the court said that readjustment pay could not be considered wages within the meaning of a Florida statute exempting wages due the head of a household for services rendered in the past. 381 F.Supp. at 1026. A right to receive money, where the right is derived from services rendered during coverture, does not depend for its community status on the characterization of the money as "wages." It cannot be seriously contended that only wages may be regarded as community assets.

The judgment of the trial court is affirmed.