**Margaret Ann LACK, Appellant,**

v.

**Nora Gibson LACK, Appellee.**

**No. 19644.**

Court of Civil Appeals of Texas, Dallas.

July 6, 1979.

Rehearing Denied Aug. 8, 1979.

Virgil E. Rogers, Gillis, Rogers & Taylor, Dallas, for appellant.

Sonja Staron, Office of Herbert L. Hooks, Dallas, for appellee.

Before GUITTARD, C. J., and AKIN and ROBERTSON, JJ.

AKIN, Justice.

■ This appeal from a summary judgment concerns a controversy between appellant, the divorced wife of a deceased fireman, and appellee, the widow of the fireman, over death benefits payable from the City of Dallas Pension Plan. The widow contends that she is entitled to the fireman's death benefits under Tex.Rev.Civ. Stat.Ann. art. 6243a § 10 (Vernon Supp. 1977–1978). The divorced wife argues,

however, that according to Texas community property law, she is entitled to a pro rata share of the death benefits resulting from the contributions of community funds made to the pension plan during their marriage. The trial court denied the divorced wife's community property claim and gave all of the proceeds to the widow under article 6243a section 10. We hold that although part of the contributions to the plan were made with community funds of the fireman and his ex-wife, the right of the fireman or his survivors to receive benefits under the plan depends on the provisions of the statute. Section 10 of article 6243a designates that the widow, rather than the ex-wife, receive one-half of the benefits. Consequently, the ex-wife is not entitled to a pro rata share of the death benefits even though a pro rata share of the death benefits would otherwise be considered community property. Accordingly, we affirm.

The facts are stipulated. Ralph Lack made contributions from his salary to the Pension Plan for Policemen and Firemen of the City of Dallas, Texas, from January 16, 1953, to the time of his death in December 1975. Additionally, the City of Dallas made contributions to the pension plan on his behalf during his employment. On August 19, 1954, Ralph Lack married appellant Margaret Lack. They were divorced on February 11, 1965, but no mention was made of the pension plan in the divorce decree. Subsequent to October 26, 1970, Ralph Lack entered into a common law marriage with appellee Nora Lack, and she was his lawful wife when he died in the line of duty in December 1975.

Appellant Margaret Lack sued the Pension Fund and appellee Nora Lack to establish her community property interest in the death benefits. Appellant claims that she has a community interest in the death benefits because during her marriage to Ralph Lack, community funds in the form of salary deductions from his paycheck were paid into the pension fund, as well as contributions made on his behalf by the city as part of his compensation. She argues that at the time of her divorce, she possessed a community property interest in any future payments from the pension fund, regardless of whether the form of the payments were pension benefits or death benefits.

In support of her position, appellant cites Tex.Fam.Code Ann. § 5.01 (Vernon 1975), and Texas Supreme Court decisions such as Cearley v. Cearley, 544 S.W.2d 661 (Tex. 1976), and Taggart v. Taggart, 552 S.W.2d 422 (Tex.1977), which hold that on division of property at divorce, benefits flowing from pension plans are community property to the extent of contributions made during marriage. The ex-wife contends that death benefits are likewise community property since there is no real distinction between pension benefits and death benefits because they are computed alike and emanate from the same source. Appellant claims, therefore, that the conversion of pension benefits into death benefits, as a result of Ralph Lack's death, does not deprive her of her community property interest in death benefit payments from the pension fund. In support of this position, she also cites Simmons v. Simmons, 568 S.W.2d 169 (Tex.Civ. App.—Dallas 1978, writ dism'd), and Herring v. Blakeley, 385 S.W.2d 843 (Tex.1976). In Simmons, this court held that disability benefits based upon contractual rights that accrued during marriage and payable to the husband after divorce were community property. According to appellant, the death benefits here are no different from the disability benefits in Simmons because both are contractual forms of compensation paid by the employer for job related injuries. Appellant's reliance on Herring stems from language in that decision which stated that "[c]ommunity rights may exist in interests that cannot be reduced to possession, such as remainder or reversion rights." 385 S.W.2d at 847. The death benefits, appellant urges, are similar to remainder rights earned by Ralph Lack. She claims that her interest in the death benefits is one-half of the total of the number of months she was married to Ralph Lack divided by the total number of months in which he made contributions to the pension plan times the dollar amount of each monthly death benefit if, as, and when it is paid.

Conversely, the widow argues that pension or disability benefits are not in issue here but only death benefits. She asserts that article 6243a section 10[1] expressly mandates that death benefits are payable only to the widow, and that the statute makes no provision for ex-wives. Tex.Rev. Civ.Stat.Ann. art. 6243a § 10 (Vernon Supp. 1977–1978) reads as follows:

In case of the death before or after retirement of any member of the fire department, police department, or fire alarm operators' department of any city or town within the provisions of this Act, from disease contracted or injury received and who at the time of his death or retirement was a member of either of said departments and a contributor to the said fund, leaving a widow, child or children under seventeen (17) years of age, *the widow and such child or children shall be entitled to receive from the said fund an amount not to exceed one-half (½) of the base pay per month as defined in Section 1B* hereof, plus one-half (½) of the service money granted to members under the provisions of any state law or any city charter of any city within the provisions of this Act; one-half (½) of the widow's amount in the aggregate shall go to the children under seventeen (17) years of age, and *the balance of one-half (½) for the widow.*

.    .    .    .    .

Upon the remarriage of the widow, either statutory or common. law, or the marriage of any child granted such pension, the pension shall cease. [Emphasis added.]

Appellee insists that the above provision that pension rights cease on remarriage supports her contention that only unmarried widows and not ex-wives are entitled to receive death benefits because the legislature's sole purpose in creating death benefits was to provide financial assistance for a deceased employee's widow, as long as she remains single, and for his minor children, so long as they remain minors.

Since the Dallas pension plan tracks the statutory distribution scheme contained in article 6243a section 10, our question is whether the language of this statute precludes the ex-wife from recovering a pro rata part of these proceeds as her community property. We hold that since the pension rights in question are wholly statutory, the legislature could designate the beneficiaries to whom death benefits are payable, and it has done so by limiting such benefits to widows so long as they remain unmarried and to children so long as they remain unmarried and are under eighteen years of age. Under the clear language of article 6243a section 10, if no survivor qualifies as a statutory beneficiary, then no benefits are payable, and if a survivor qualifies but subsequently marries, the benefits cease. Any inchoate interest of a spouse of a participant never ripens into a community property interest until occurrence of the contingency on which that interest depends. In this case, that contingency has not occurred and can never occur, insofar as any interest of appellant is concerned. Since the right to death benefits can never be established until the death of the participant, such benefits are not property acquired during the marriage, and, therefore, are not community property. The legislature's control over these benefits was approved in *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W.2d 1009, 1013 (1937). In *Trammell,* our supreme court held that the right of a pensioner to receive monthly payments from a statutory pension fund, after retirement and after his rights in the fund had accrued, was subordinate to the right of the legislature to abolish the pension system or to diminish the accrued benefits of a pensioner under the plan. It logically follows that if the share of a participant in a statutory pension plan may be reduced or divested by the legislature, the legislature may also divest the inchoate contingent interest of an ex-wife. *See Cook v. Employees Retirement System of Texas,* 514 S.W.2d 329, 331 (Tex.Civ.App.—Texarkana 1974, writ ref'd n. r. e.) (children over eighteen years of age but under twenty-one

---

1. Article 6243a § 10 was enacted pursuant to Tex.Const. art. III, sec. 51–f.

could be divested of their right to benefits when the age of majority was reduced to eighteen).

■ The rationale of *City of Dallas v. Trammell* was that an employee who elected to participate in a statutory pension plan did so "in contemplation of the reserved right of the Legislature to amend or to repeal the laws on which the pension systems are founded." 101 S.W.2d at 1012. This particular language, as well as the holding in *Trammell,* was quoted with approval by our supreme court in *Board of Managers of the Harris County Hospital District v. Pension Board of the Pension System for the City of Houston,* 449 S.W.2d 33, 37 (Tex.1969). In accordance with these decisions, we hold that whatever inchoate community interest the spouse may have in the retirement fund, that interest is contingent on her surviving the participant as his widow; consequently, she has no claim to death benefits after divorce.

Our holding here is limited to death benefits under a pension plan authorized by article 6243a. We express no opinion with respect to the question of whether the ex-wife would have been entitled to a share in the pension benefits if her ex-husband had retired rather than died. Nor do we determine whether a spouse's contingent interest in the fund may be considered in a division of the community estate on divorce.[2] Furthermore, our holding here should not be construed as extending to death benefits under private pension plans. *See Lee v. Lee,* 112 Tex. 392, 247 S.W. 828, 832–33 (1923). *See also Grost v. Grost,* 561 S.W.2d 223, 226 (Tex.Civ.App.—Tyler 1977, writ dism'd) (death benefits under a private pension plan divisible upon divorce).

The same conclusion on the question of the spouse's interest in an employee's state authorized pension plan has been reached by the Supreme Court of California. *Benson v. City of Los Angeles,* 60 Cal.2d 355, 361–62, 33 Cal.Rptr. 257, 260, 384 P.2d 649, 652 (1963). In *Benson,* the court held that the wife's interest in a widow's pension in a

municipal pension plan may never vest in her in the absence of the happening of the contingency upon which payment of the widow's pension depends. *See also Waite v. Waite,* 6 Cal.3d 461, 99 Cal.Rptr. 325, 492 P.2d 13 (1972), overruled on other grounds. *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). *Benson* and *Waite* have been criticized by both courts and commentators. In *In re Marriage of Peterson,* 41 Cal.App.3d 642, 655, 115 Cal.Rptr. 184, 194 (Ct.App.1974), overruled on other grounds, *In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976), an intermediate court stated that *Benson* is not fair to ex-wives. Also, Reppy, *Community And Separate Interests In Pensions and Social Security Benefits After Marriage of Brown and Erisa,* 25 U.C.L.A.L.Rev. 417, 443–82 (1978), contains an exhaustive and illuminating study of the California terminable interest rule announced in *Benson* and *Waite.* Notwithstanding these criticisms, we conclude that our solution of the problem is the only one consistent with Texas statutes and decisions.

Affirmed.

ROBERTSON, Justice, dissenting.

I respectfully dissent for two reasons. First, the majority opinion, in refusing to hold that the death benefits are community property, ignores the rule of community property law that spouses share in property earned during marriage. Second, the majority's reliance on *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W.2d 1009 (1937), is misplaced and does not support its holding.

The majority opinion is confusing because it does not classify the death benefits according to traditional notions of community property law. Tex.Fam.Code Ann. § 5.01 (Vernon 1975) states that property must either be separate or community. Although the majority states that these benefits are not community property, it fails to classify

2. *See Collida v. Collida,* 546 S.W.2d 708 (Tex. Civ.App.—Beaumont 1977, writ dism'd) (pen-sion benefits from statutory pension plan divisible upon divorce).

them as separate property and, apparently, it has created a new classification of property not defined in the Texas Family Code. Texas case law, however, compels me to conclude that these death benefits are community property.

As the majority opinion points out, both *Lee v. Lee,* 112 Tex. 392, 247 S.W. 828 (1923), and *Grost v. Grost,* 561 S.W.2d 223 (Tex.Civ.App.—Tyler 1977, writ dism'd), held that death benefits earned during marriage and paid as part of the employee's compensation were community property. I am unable to understand why the majority states that the death benefits here, but for the statute, would also be community property. The death benefits were earned in part during Ralph Lack's marriage to appellant and were purchased with community funds through salary deductions from Ralph Lack's paycheck and, therefore, are community property. In addition, *Collida v. Collida,* 546 S.W.2d 708, 709 (Tex.Civ. App.—Beaumont 1977, writ dism'd), explicitly held that pension payments from a statutory pension plan were community property. In discussing a divorced wife's right to receive pension payments directly from the pension plan, the court stated that her *"interest in the fund is community property".* 546 S.W.2d at 710. Likewise, appellant's *"interest in the fund",* i. e., death benefits, is also community property.

The majority opinion states that appellant's community property rights in the death benefits never vested and, therefore, she has not been divested of anything. This argument ignores a crucial premise of community property law, that is, benefits earned during marriage belong to the community estate. Tex.Const. art. XVI, sec. 15. As the court in *Perez v. Perez,* 576 S.W.2d 447, 449 (Tex.Civ.App.—San Antonio), *rev'd on other grounds,* 22 Tex.Sup.Ct.J. 553 (Sept. 25, 1979) stated:

> The argument that "contingent" or "inchoate" rights cannot be considered as part of the assets of the community estate until all events have occurred which irrevocably fix the liability of the government to pay the benefits was rejected by

the Supreme Court of Texas in *Cearley v. Cearley,* 544 S.W.2d 661, 663–664 (Tex. 1976). In rejecting the contention that only earned or vested rights can be considered community assets, the Supreme Court said: "We hold that such rights, prior to accrual and maturity, constitute a contingent interest in property and a community asset subject to consideration along with other property in the division of the estate of the parties . . . . . *Id.* at 666.

· · · · ·

The decisive factor is that, whatever the nature of the benefits involved, the right to receive them has been earned, in whole or in part, by rendition of services during coverture. To the extent that the right rests on services rendered during coverture, that right is the fruit of what must be considered as community effort.

Clearly, the right to receive these benefits was earned during marriage and constituted a community asset.

In addition, the majority has misconstrued the holding in *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W.2d 1009 (1937). That case does not concern the problem of whether the legislature could divest a wife of her community property rights in a statutory pension fund. The Supreme Court held that the legislature had the right to diminish the amount of the pension payable or to completely abolish the pension fund. Contrary to the majority's interpretation, the court also held that the right to participate in such fund could not be abolished. The court stated:

> [A]n employee . . . acquires by virtue of his contract with the city . . . the right to participate in the pension fund. . . . It may be conceded that this right to participate in the pension fund, *so long as there is such a fund, is one which cannot be destroyed.* [Emphasis added] 101 S.W.2d at 1011.

*Trammell,* contrary to the majority's position, does not stand for the proposition that the legislature has the right to cut off the community property rights of an ex-wife. Nowhere in the statute itself or in the case

law of this state can authority be found for the proposition that the legislature, in enacting article 6243a, intended to deprive a wife of her community property rights in a statutory pension plan. The majority attempts to ascribe an intent to the legislature that simply does not exist. Appellant made significant contributions of community property to the pension fund, but the majority holds that the legislature intended that all of appellant's contributions go to appellee. I simply cannot agree that the legislature intended such an inequitable result.

The majority's explanation for its holding is analogous to the explanation given for the holding in *Benson v. City of Los Angeles,* 60 Cal.2d 355, 33 Cal.Rptr. 257, 384 P.2d 649 (1963). Under circumstances similar to those in this case, the California Supreme Court denied statutory pension benefits to an ex-wife of a fireman. The court reasoned that the legislature intended to exclude ex-wives from pension benefits in order to retain flexibility in the pension plan. 60 Cal.2d at 361–62, 33 Cal.Rptr. at 260, 384 P.2d at 652. In criticizing the holding in *Benson,* one commentator has stated that the reasoning underlying that decision and other California cases that have followed it is unsound because the California statutory pension plans show:

> the absence of any evidence of legislative intent to deprive the wife of her community property rights both in the statutory language and in the legislative history documents. It is, purely and simply, a product of the supreme court's fancy. The mere provision for a widow's pension does not mean the legislature intended to take the first wife's property when she was not the widow. More likely, the legislature, assuming the "widow" would be the same spouse whose community funds have been used to acquire rights in the program, intended to expand her rights rather than cut off payments on her husband's death. There is just no suggestion that by providing for a widow's pension, the legislature had in mind the case where fifty percent of a second wife's benefits were purchased with the first wife's property . . . .

Reppy, Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and Erisa, 25 U.C.L.A.L.Rev. 417, 468 (1978). I believe that the majority has made the same mistake in construing the statutory pension plan here as Professor Reppy states the California courts have made.

Appellant was married to Ralph Lack for almost one-half of the period that he made contributions to the pension plan. It is simply inequitable that appellant receive nothing here, not even her pro rata share of the contributions made with community funds. At the very least, appellant should be entitled to reimbursement for her share of the community funds paid into the pension plan during her marriage to Ralph Lack.

In conclusion, the simple solution to this controversy is to apply the principles of community property law to the death benefits. To do so would merely entitle appellant to what is rightfully hers. Since appellant was married to Ralph Lack for a total of 127 months, and he made contributions to the plan for 276 months, appellant, as long as she remains single, should be entitled to one-half of 127/276 times the actual amount of death benefits payable.