713 P.2d 1249

**Ann Angela HAYNES, Petitioner, Appellee, Cross-Appellant,**

v.

**David Lee HAYNES, Respondent, Appellant, Cross-Appellee,**

**Ann Angela HAYNES, Petitioner, Appellee, Cross-Appellant,**

v.

**PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM and the Fund Manager; Phoenix Police Pension Board, Appellants, Cross-Appellee.**

**Nos. 1 CA–CIV 6278, 1 CA–CIV 6323 and 1 CA–CIV 6377.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 11, 1984.

---

Galasky & Meador by Andrew G. Galasky, Phoenix, for petitioner-appellee, cross-appellant.

Lewis & Roca by Jeremy E. Butler, Paul G. Ulrich, Dale A. Danneman, David Lee Titterington, Phoenix, for respondent-appellant, cross-appellee.

Napier & Jones, P.C. by Robert E. Jones, Jr., Phoenix, for appellants, cross-appellees Phoenix Police Pension Bd.

Snell & Wilmer by Bruce D. Pingree, William R. Hayden, Thomas J. Kennedy, Michael P. Anthony, Phoenix, for appellants, cross-appellees Public Safety Personnel Retirement System and The Fund Manager.

## OPINION

JACOBSON, Chief Judge.

In the case of *Stokes v. Stokes*, 143 Ariz. 590, 694 P.2d 1204 (1984), this court held that A.R.S. § 38–850(C), Arizona's anti-alienation statute dealing with benefits payable under the Public Safety Personnel Retirement System, prohibited a trial court from imposing a trust in favor of a former spouse/creditor on the beneficiary's interest in the retirement system. The present appeal questions whether that same statute precludes a trial court from awarding any community interest in the retirement system to the noncovered spouse of a beneficiary under the system.

The material facts in this case are not in dispute. Ann Angela Haynes (wife) filed a petition seeking the dissolution of her marriage with David Lee Haynes (husband). At this time, the parties had been married approximately 25 years. The husband was a Captain in the Phoenix Police Force and had been a Phoenix police officer since 1959. He was a participant in the Public Safety Personnel Retirement System (the system). At the time the decree of dissolution was entered in this case, the husband was entitled to retire, but chose not to do so.

As part of the proceedings in the trial court, the Public Safety Personnel Retirement System and its Fund Manager together with Phoenix Police Pension Board (retirement agencies) were made parties to the dissolution action, as the wife sought affirmative relief against these parties in connection with any retirement benefits which may be payable to the husband.

In addition, the evidence showed that during the marriage the husband and wife purchased, as joint tenants, real property known as the Royal Palm residence. It is undisputed that the wife contributed $9,630.47 of her separate property as the down payment on this property.

Insofar as pertinent to this appeal, the trial court's decree provided the following:

1. That the interest in the retirement system was divisible community property.

2. That the wife's community interest in that system would be determined by the formula of a sum equal to one-half of the amount which is determined after calculating the fraction in which 262 (the number of months the parties were married under the system) is the numerator and the total number of months the husband remains in the system is the denominator.

3. The wife's interest in the retirement system was to be paid at the same time and in the same manner as it was paid to the husband.

4. At such time as benefits were payable under the pension plan, the system was ordered to pay the wife's interest directly to her.

5. That the Palm Royal residence was joint tenancy property to be divided equally between the parties without reimbursement to the wife of her separate property contribution to the purchase price.

6. That the husband pay $3,000.00 to the wife for attorney's fees.

While there have been numerous appeals and cross-appeals in this action, the basic positions of the parties in this appeal are:

1. The retirement agencies and the husband contend that the trial court erred in finding that retirement benefits payable under the system are divisible community property and that such benefits can be paid directly to the wife.

2. The retirement agencies also contend that if retirement benefits are divisible community property, the trial court erred in not offsetting the wife's interest in the system with other community property.

3. The husband also contends the court's formula in arriving at the wife's interest in the retirement benefits is invalid as it allows the wife to share in the husband's increased earning power when they are no longer husband and wife. Also the husband objects to the award for the wife's attorney's fees.

4. The wife contends the trial court erred in failing to order the husband to start payments of her interest in the retirement system at such time as he was eligible to retire, regardless of whether he retires in fact, and in failing to reimburse her for the separate property contribution made on the Royal Palm residence.

Additional facts will be supplied as are necessary to address each of these issues.

## ARE RETIREMENT BENEFITS PAYABLE UNDER PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM DIVISIBLE COMMUNITY PROPERTY?

■ The main issue in this appeal is the contention that the Public Safety Personnel Retirement System is not subject to the community property laws of this state. This contention is based upon two assertions: (1) That because of the special nature of the system, the legislature intended that a beneficiary's interest in the system not be treated as divisible community property, and (2) that A.R.S. § 38–850(C) prohibits the court from treating such an interest as community property.

Turning first to the legislative intent argument, it is contended that the reasoning utilized in the two United States Supreme Court decisions of *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), and *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) should be applied to benefits under the system.

In *Hisquierdo* (dealing with retirement benefits payable under the Railroad Retirement Act, 45 U.S.C.A. §§ 231, *et seq.*) and in *McCarty* (dealing with military retirement benefits), the Supreme Court embarked upon an analysis of congressional policy starting with the anti-alienation statute in *Hisquierdo* and the "anti-anticipation" statute in *McCarty*. In both cases, a majority of the United States Supreme

Court found that state interference (through its community property laws) with the ascertained congressional policy that benefits under both plans were to be a "personal entitlement" (*McCarty*, 453 U.S. at 227, 101 S.Ct. at 2738) that will "actually reach the beneficiary" (*Hisquierdo*, 439 U.S. at 584, 99 S.Ct. at 809–10) was prohibited under the federal supremacy clause. While it is unclear exactly how this "policy" was ascertained (in *Hisquierdo* it clearly stemmed from an anti-anticipation statute, which was not present in *McCarty*) the basic premise appears to be that:

> Congress has fixed an amount thought appropriate to support an employee's old age and to encourage the employee to retire. Any automatic diminution of that amount frustrates the congressional objective. By reducing benefits received, it discourages the divorced employee from retiring. And it provides the employee with an incentive to keep working, because the former spouse has no community property claim to salary earned after the marital community is dissolved.

*Hisquierdo*, 439 U.S. at 585, 99 S.Ct. at 810.

and

> Congress has enacted a military retirement system designed to accomplish two major goals: to provide for the retired service member, and to meet the personnel management needs of the active military forces. The community property division of retired pay has the potential to frustrate each of these objectives.

*McCarty*, 453 U.S. at 232–233, 101 S.Ct. at 2740–41.

\* \* \* \* \* \*

> Congress has determined that a youthful military is essential to the national defense; it is not for States to interfere with that goal by lessening the incentive to retire created by the military retirement system. *Id.* 453 U.S. at 235, 101 S.Ct. at 2742.[1]

*Koelsch* is discussed more thoroughly later in this opinion.

---

1. How persuasive this reasoning is, in light of our recent decision in *Koelsch v. Koelsch*, 148 Ariz. 187, 713 P.2d 1245 (1984) is doubtful.

The same arguments are advanced here, that is, that by enacting A.R.S. § 38–850(C), the legislature sought to "personalize" the retirement benefits for the working spouse [2] and that because of the paramilitary nature of the duties performed by public safety personnel, the legislature intended to promote a youthful, vigorous force and encourage early retirement. It is argued that declaring that retirement benefits are divisible community property frustrates both of these perceived legislative purposes.

While the reasoning of the United States Supreme Court may have some validity [3] when that court is interpreting legislation which is national in scope and affects both community property states and common law states, that reasoning loses its persuasiveness when ascertaining the intent of a legislature in a community property state.

It is argued that there is no inference or suggestion in the legislation creating the system which evidences a legislative intent to provide for former spouses under the system. In a community property state this argument misses the point. A.R.S. § 25–211 provides that all property acquired during marriage is community property. In our opinion there is no question that the retirement benefits provided under the system are deferred compensation for services previously rendered and are therefore property acquired during marriage.[4] *See Johnson v. Johnson*, 131 Ariz. 38, 638 P.2d 705 (1981). In this context, the inquiry should be, not whether the legislature intended to provide for the ex-spouse, but whether the legislature in clear and unequivocal language intended to deprive the ex-spouse of a community interest in property acquired during marriage. In the absence of such a clear legislative statement, we cannot presume that the legislature intended to overturn settled community property principles merely on inferences that might be drawn from a hypothetical early retirement philosophy, or the enactment of an anti-alienation statute.

■ We now determine whether A.R.S. § 38–850(C), in and of itself, mandates that retirement benefits under the system are separate property. This statute provides:

Benefits, employee contributions or employer contributions including interest, earnings and all other credits, payable under this system shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit contribution, earning or credit, under the terms of the system, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any right hereunder shall be void. The fund shall not in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any person entitled to such rights hereunder.

Again, *Hisquierdo* and the case of *Ridgway v. Ridgway*, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981) are cited as authority

---

**2.** It is also urged that the dicta in *Bugh v. Bugh*, 125 Ariz. 190, 608 P.2d 329 (App.1980), interpreting an anti-assignment statute under the workman's compensation law, evidenced a legislative intent that liability benefits are not assignable to a non-injured spouse upon dissolution of the marriage. The clear holding of *Bugh* was that disability benefits under the workman's compensation law, after dissolution, are not community property. We reject this dicta in the context that a judicial determination of a community interest constitutes an assignment. (See discussion of this issue later in this opinion.)

**3.** We note that congress disagreed with the Supreme Court's ascertaining of its "policy" when it passed The Uniformed Services Former Spouses Protection Act, Pub.L. No. 97–252, 96 Stat. 730, which in effect nullified the *McCarty* ruling.

**4.** It is hinted that retirement benefits under the system are in reality reduced compensation for reduced current services and thus are "earned" after marriage and hence separate property. However, we are pointed to no services which are performed by retired public safety employees after retirement which would make such a concept viable.

for the proposition that the anti-alienation provisions of A.R.S. § 38–850(C) prohibit an Arizona court from treating benefits under the system as community property. We previously disagreed with the United States Supreme Court that such a provision, at least in Arizona, evidences a legislative intent to treat such an interest as separate property. We now disagree with that court's legal reasoning. In our opinion the Supreme Court's analysis of anti-alienation legislation fails to consider what such legislation intends to accomplish—prevention of attacks on the fund by creditors—and misconstrues basic tenets of community property law.

The prohibited acts under the statute are "anticipation, alienation, sale, transfer, assignment, charge, garnishment, execution or levy." Clearly, these prohibitions are intended "to protect the benefits and interest in the fund from the creditors and assignees of the member." *Collida v. Collida*, 546 S.W.2d 708, 710 (Tex.Civ.App. 1977). Here, the wife's claim on the fund is not as an assignee or creditor of the member, but as an owner, under the community property laws of this state. This distinction was recognized in *Phillipson v. Board of Administration Public Employees' Retirement System*, 3 Cal.3d 32, 89 Cal.Rptr. 61, 473 P.2d 765 (1970), which interpreted an anti-alienation statute protecting state employees:

> Plaintiff [non-member spouse], however, claims not as a creditor, but as an owner with a 'present, existing and equal interest.' [Citation omitted]. The recognition of an ownership claim cannot be described as the levy of execution, garnishment, attachment or assignment of property.

Id. at 473; P.2d at 772.

■ When each of the operative words of the statute are analyzed we likewise agree that the recognition of the wife's ownership interest in the system cannot be described as an "anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy." Obviously, a declaration of an ownership interest does not entail a "sale, assignment, pledge, encumbrance, charge, garnishment, execution or levy." Nor does it constitute a "transfer." Since the acquisition of the entitlement to the benefit becomes community property from its inception, only the individual interest of each spouse in that community property needs to be ascertained.

■ The word "anticipation" is not defined in the statute and therefore must be given its common law meaning, that is, the ability to require a lump sum payment contrary to the specified periodic payments allowed under the statute. E. Griswold, *Spendthrift Trusts* § 512 L.Ed. (1947). There is nothing in the determination that the fund is community property or the judicial determination of the individual spouse's interest in that community property, which would violate the prohibition against an "anticipation".

■ Nor is the word "alienation" defined in the statute. In the law of real property that word refers to a transfer of title or ownership (by a deed or lease) by a grantor and not by operation of law. 3 C.J.S. *Alienation* at 771–72 (1973). Again, a finding that the property acquired during marriage is community property and its judicial division does not constitute a transfer by the member and thus, is not an "alienation".

Other courts have similarly held that a non-member spouse's interest in a retirement fund established by a judicial decree is that of an owner, and not that of a judgment creditor, and exemption statutes do not bar access directly to the fund. *See, In re Marriage of Pope*, 37 Colo.App. 237, 544 P.2d 639 (1975); *Uluhogian v. Uluhogian*, 86 Ill.App.3d 654, 41 Ill.Dec. 761, 408 N.E.2d 107 (1980); *Collida v. Collida, supra*. We therefore conclude that a judicial determination that the benefits accruing under the system during marriage are community property is not in contravention of either the purpose of the statute or its literal meaning.

■ Finally, the retirement agencies argue that requiring the system, at the time benefits are to be paid under the plan, to make payments directly to both the member and the ex-spouse imposes an undesirable administrative and financial burden. There is no evidence in this record to support such a contention. Even if we are to assume that some additional burden is going to be placed on the system by requiring it to issue two checks instead of one, we cannot assume that such a financial or administrative burden would be so drastic that we would say that the trial court abused its discretion in ordering direct payment, a method obviously calculated to simplify enforcement of the court's division of this community asset. *See Phillipson v. Board of Administration, supra.*

■ Finally, insofar as the arguments raised by the retirement agencies are concerned, it is urged that the trial court erred in not offsetting the wife's community interest in the retirement benefit fund with other community property. *See Tester v. Tester,* 123 Ariz. 41, 597 P.2d 194 (App. 1979). The simple answer to this contention is that there was not sufficient other community property to offset the wife's interest in the retirement fund, which had a total present cash value of $183,773. The trial court did not err in rejecting this option.

IS THE WIFE ENTITLED TO IMMEDI-
ATE PAYMENT OF HER INTEREST
IN THE SYSTEM UPON THE HUS-
BAND BECOMING ELIGIBLE FOR
RETIREMENT?

■ The husband in this case, at the time the decree of dissolution was entered, had over 20 years service under the system and therefore his rights were both fully vested and matured. He could have retired, had he chosen to do so, and would have immediately started drawing retirement benefits. As of January 1, 1981, the husband's total monthly retirement benefit would have been $1,327.00 for the rest of his life. The husband chose not to retire and thus trigger the payment of this benefit.

The wife contends, under the authority of *Gilmore v. Gilmore,* 29 Cal.3d 418, 174 Cal.Rptr. 493, 629 P.2d 1 (1981), that the trial court erred in deferring payment of her interest in the benefit until such time as the husband actually retires. She argues that since the sole control as to when the benefit is to be made has now passed to the whim of the working spouse, it is inequitable to require her to wait on this whim to collect her property.

We recently, in the case of *Koelsch v. Koelsch, supra, (petition for review granted* May 30, 1984) ruled on this exact issue under the Public Safety Retirement Fund. In *Koelsch,* we held:

"While the law may equitably require the interest of a spouse not working in the job covered by the retirement plan to be determined on the basis of what community labor bears to ultimate labor required to bring an asset to fruition, once that fruition is or could be accomplished, the value of the community interest should become fixed. One spouse should not be able, by invoking a condition solely within his or her control, to either defeat or diminish the community interest of the other spouse."

We therefore hold that the formula for determining a community interest in a deferred retirement plan under the circumstances presented here, should have as a denominator a figure which is limited by the minimum number of months necessary to enable the covered spouse to begin receiving benefits under the plan."

We further observed in *Koelsch,* that the question of when the non-working spouse is entitled to receive the community interest in retirement benefits was subject to competing interests, the resolution of which depended upon the circumstances of the parties. We therefore held:

Where bona fide reasons exist for the covered spouse to continue working and thus deferring the enjoyment of benefits, we believe that the resolution of the com-

peting interests involved requires that the percentage of the spouse whose interest is not covered by the plan be fixed as of the date that the benefit would mature, but that payment of those benefits be postponed until retirement of the spouse who is covered by the plan actually occurs.

That portion of the judgment awarding the wife a percentage of benefits and when she would be entitled to receive them is reversed and the matter remanded for consideration under *Koelsch.*

## OTHER ISSUES RAISED

The wife urges that the trial court erred in not reimbursing her for her separate property contribution to the Royal Palms property. We disagree. In *Becchelli v. Becchelli,* 109 Ariz. 229, 508 P.2d 59 (1973), the Arizona Supreme Court held that where one spouse uses separate funds to purchase real property and places title to that property in joint ownership with the other spouse, it is presumed that the conveyance constitutes a gift to the marital community. The burden is on the spouse who contributes separate funds to prove by clear and convincing evidence that no gift was intended. *Stevenson v. Stevenson,* 132 Ariz. 44, 643 P.2d 1014 (1982). The wife's statement alone, long after the fact, that no gift was intended does not require the trial court to believe that this burden was sustained.

The husband urges that the trial court erred in requiring him to pay the wife $3,000 in attorney's fees. We first observe that the award of attorneys' fees did not completely reimburse the wife for all her attorneys' fees incurred. Secondly, an award of attorneys' fees in a dissolution case is a matter left to the sound discretion of the trial court. *Nelson v. Nelson,* 114 Ariz. 369, 560 P.2d 1276 (App.1977).

While the wife did receive approximately $50,000 from the sale of community property, given the respective earning power of both parties and the fact that the wife incurred additional attorneys' fees over and above those ordered to be paid by the husband, we cannot say the trial court abused its discretion in this regard.

Additionally, the husband argues that the trial court's order on retirement benefits allows the wife to share in his increased earning power after dissolution. This argument was specifically rejected in *VanLoan v. VanLoan,* 116 Ariz. 272, 569 P.2d 214 (1977) (*see* dissenting opinion, Holohan, J.) and impliedly rejected by this court in *Koelsch v. Koelsch, supra.*

Finally, the husband argues that the trial court failed to consider tax consequences in valuing the wife's interest in the voluntary deferred compensation plan. Husband acknowledges this issue is controlled by our Supreme Court's decision in *Johnson v. Johnson,* 131 Ariz. 38, 638 P.2d 705 (1981) which holds that tax consequences need not be considered when the imposition of such taxes is in the distant future. However, husband urges that this decision should be reconsidered.

The Court of Appeals cannot alter or fail to give effect to holdings of the Supreme Court, *Farmers Ins. Co. of Arizona v. Vagnozzi,* 132 Ariz. 223, 644 P.2d 1309 (App.1981). Whether a state Supreme Court precedent should be disaffirmed is a question reserved to that Court, *Shell Oil Co. v. Christie,* 125 Ariz. 38, 607 P.2d 21 (App.1979). The trial court did not err under *Johnson* in not considering the tax consequences.

The judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings consistent with this opinion.

MEYERSON, P.J., and OGG, J., concur.