999 P.2d 184

**Guillermina Suarez PARADA,
Plaintiff/Appellee,**

v.

**Ana PARADA, Defendant/Appellant.**

**No. CV–97–0520–PR.**

Supreme Court of Arizona,
En Banc.

April 19, 2000.

J. Marc Montijo Tucson Attorney for Plaintiff/Appellee.

Machado and Gonzales, P.C. Nogales By Jose Luis Machado Attorney for Defendant/Appellant.

Lieberman, Dodge, Sendrow & Gerding, LTD. Phoenix By Marc R. Lieberman Attorney for Amicus Curiae, Fund Manager, Arizona Public Safety Personnel Retirement System.

OPINION

ZLAKET, Chief Justice.

¶1 Raul Parada was married to Guillermina Suarez Parada during all of the time he worked for Santa Cruz County. That employment qualified him for benefits under the Arizona Public Safety Personnel Retirement System (hereinafter referred to as "the plan"), which is funded by contributions from employee members, their employers, and investment earnings. *See* A.R.S. § 38–843. Under the plan, a member's monthly retirement benefit is calculated as a percentage of salary based on years of service. *See id.* § 38–845. The plan further provides for the monthly payment of a reduced amount to a "surviving spouse" upon the member's death. *See id.* § 38–846(B).

¶2 In September 1987, after Raul had retired, he and Guillermina were divorced in the Pima County Superior Court. Each spouse was awarded "50% of the retirement benefits from Husband's employment with Santa Cruz County." The dissolution decree further provided as follows:

6. Petitioner [Raul] shall arrange to secure payment of 50% of the monthly retirement benefit directly to Respondent [Guillermina], if possible. Petitioner shall provide Respondent with proof of efforts to accomplish same.

7. Petitioner shall name Respondent as an irrevocable beneficiary of 50% of any death benefits payable by reason of his former employment with Santa Cruz County. Petitioner shall provide Respondent with documentation of said beneficiary designation.

Thereafter, Guillermina collected one-half of Raul's retirement benefit until his death in 1995.

¶3 On April 26, 1989, Raul and his second wife, Ana, signed an "Irrevocable Assignment" granting Guillermina "50% of any and all benefits payable from the Public Safety Personnel Retirement System, be these retirement benefits, death benefits or refund benefits." The document further states that

ANA PARADA hereby agrees that she will remit one-half of any and all proceeds paid to her as the surviving spouse of

RAUL N. PARADA to GUILLERMINA SUAREZ PARADA.

ANA PARADA does hereby irrevocably assign to GUILLERMINA SUAREZ PARADA 50% of any and all benefits payable to her or to which she may be entitled from the Public Safety Personnel Retirement System earned by or payable by reason of RAUL N. PARADA's participation.

Guillermina Parada's signature does not appear on this assignment, nor is there evidence in the record regarding the circumstances surrounding its execution.

¶ 4   On May 5, 1989, the attorneys for Raul and Guillermina presented the court with a "Stipulation and Order Modifying Decree of Dissolution," which recites in part: "It is further agreed that Ana Parada shall join in the irrevocable assignment of 50% of athe [sic] monthly death benefit and agrees to be bound by this Court's Order in such regard, and only for the purposes of this agreement is a party to this action."[1]   We cannot discern from the record whether the April assignment was attached to the stipulation, or if the court knew it had already been executed.   In any event, the judge signed the order despite the fact that neither Ana Parada nor her lawyer, assuming she had one at the time, was a party to the stipulation.   Moreover, there is no indication in the record that she ever made a formal appearance in these dissolution proceedings.

¶ 5   Upon Raul's death in the fall of 1995, Ana began receiving the surviving spouse's benefit but did not share it with Guillermina, who thereafter brought suit for breach of contract and quantum meruit.   Venue was transferred to Santa Cruz County, where Ana resides.   In October, 1996, the trial court ruled that although the assignment was invalid, Guillermina retained a community interest in Raul's death benefit.   Therefore, it granted summary judgment in her favor.

¶ 6   The court of appeals agreed that A.R.S. § 38–850 prevented both Raul and Ana from assigning any portion of Raul's

death benefit to Guillermina.   *Parada v. Parada,* 191 Ariz. 421, 423, 956 P.2d 1243, 1245 (App.1997).   Like the trial court, however, it found nothing in the statutes indicating "a legislative intent to deprive the non-employee ex-spouse of whatever community interest he or she might have in the employee spouse's death benefits."   *Id.* at 424, 956 P.2d at 1246.   It reversed the summary judgment in favor of Guillermina, holding that she had an interest in such payments to the extent that she might not have received her full community share of Raul's retirement benefits before his death, *id.* at 423–24, 956 P.2d at 1245–46, and remanding the case to the trial court for a valuation of those benefits at the time of dissolution.   Guillermina petitioned for review.

## Type of Plan

■ ¶ 7   The court of appeals mischaracterized the retirement program here as a "defined contribution plan."   *Id.* at 423, 956 P.2d at 1245.   The *amicus* fund manager asks that we correct this error to reflect that we are dealing with a defined benefit plan.

■ ¶ 8   A defined contribution plan is one "which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account, and any income, expenses, gains or losses, and any forfeitures of accounts and of other participants which may be allocated to such participant's account."   26 U.S.C. § 414(i).   In contrast, a defined benefit plan is one in which "benefits are specified in advance, usually as a percentage of salary and related to years of service, and no account is kept for the employee."   *Johnson v. Johnson,* 131 Ariz. 38, 42, 638 P.2d 705, 709 (1981).

¶ 9   Here, when a member of the plan qualifies for retirement, he or she "shall receive a monthly amount which equals fifty per cent of the member's average monthly benefit compensation."   A.R.S. § 38–845(A).   The percentage is adjusted up or down ac-

---

1.   The stipulation and order also includes a promise by Raul to designate Guillermina "as the refund beneficiary of 50% of the benefits described in A.R.S. Section 38–846(H)"(now sub-

section F).   The record contains a copy of an undated letter from him to the plan administrator making this designation.   The issues presented here do not concern refund benefits.

cording to the employee's length of service. *See id.* When the employee dies, the surviving spouse is entitled to "a monthly amount equal to two-thirds of the monthly amount of pension which the decedent would have received immediately before death." *Id.* § 38–846(B).[2] In addition, even though employees contribute to the plan, no individual accounts are kept. *See id.* § 38–850(B). Thus, the statutes clearly create a defined benefit plan, not a defined contribution plan. *See Miller v. Miller,* 140 Ariz. 520, 523, 683 P.2d 319, 322 (App.1984) (examining this plan and holding that it is a "defined benefit plan"). Obviously, this distinction could be important during the asset valuation phase of an appropriate case, though it has little impact here.

¶ 10   No individual account ever existed in Raul's name. When he stopped working, retirement benefits in a fixed amount were payable until his death. Following the divorce, Guillermina collected one-half of those payments. After Raul died leaving a surviving spouse, Guillermina wanted to continue receiving one-half of the monthly death benefit. In our view, the law does not allow for this.

## Assignment of Benefits

¶ 11   We agree with the trial court and the court of appeals that the purported assignment of benefits to Guillermina was not valid. A.R.S. § 38–850(C) unequivocally states that the assignment of

[b]enefits, employee contributions or employer contributions, including interest, earnings and all other credits, payable under this system ... either voluntary or involuntary, prior to actually being received by the person entitled to the benefit, contribution, earning or credit, under the terms of the system, and any attempt to ... assign ... any such right hereunder shall be void.

¶ 12   The attempted incorporation of the assignment into the modified decree of dissolution did not cure this defect. While it may be true that even an erroneous judgment is conclusive as to the parties, *see Ari-*

zona *Downs v. Superior Court,* 128 Ariz. 73, 76, 623 P.2d 1229, 1232 (1981), the mere assertion in the stipulation and order that Ana was a party for purposes of the modification was insufficient to bind her. "Parties cannot be brought into court and a valid judgment rendered for or against them by merely including them in the judgment." *McDonnell v. Southern Pac. Co.,* 79 Ariz. 10, 12, 281 P.2d 792, 793 (1955). Aside from her signature on the purported assignment, we find nothing in the record to suggest that Ana was given proper notice of the modification hearing or that she ever appeared personally or through counsel at any stage of the proceedings. She cannot, therefore, be subject to the court's decree.

## Benefits Pursuant to A.R.S. § 38–846

¶ 13   Guillermina argues, however, that even without the assignment she qualifies as a "surviving spouse" under the statute providing for benefits payable upon the death of the employee. A.R.S. § 38–846(A) reads in part:

If the spouse of a member or retired member is surviving at such member's death, the spouse shall be eligible for a surviving spouse's pension, provided that such spouse had been married to the decedent either for a period of at least two years prior to such member's date of death or during such member's service.

The statute does not define "surviving spouse." It also does not allow the member to specify the recipient of this benefit, in contrast to § 38–846(F)(formerly subsection H), which permits the designation of a "refund beneficiary."

¶ 14   In considering Guillermina's argument, we apply the plain meaning of the language in question. *See State v. Scotia,* 146 Ariz. 159, 160, 704 P.2d 289, 290 (App. 1985) ("Statutory construction applies generally accepted meanings to challenged words or terms."). Common definitions of "spouse" include "married person," *Merriam Webster's Collegiate Dictionary* 1138 (10th

---

**2.** In 1999, the legislature increased the amount of the benefit from two-thirds to three-fourths.

*See* Laws 1999 Ch. 50, § 5.

ed.1996), and "[o]ne's husband or wife by lawful marriage; a married person," *Black's Law Dictionary* 1410 (7th ed.1999). In every instance, the definition refers to a current status, not a former one.

¶ 15 Had the legislature intended § 38–846 to include ex-spouses, it could easily have said so. This is particularly true given our alarming divorce rate. Additionally, if the plan were to embrace former wives and husbands, more than one person would frequently be eligible to receive a "surviving spouse's pension." Such an interpretation does not square with the statute's explicit reference to "*the* spouse ... surviving at such member's death" (emphasis added), which plainly implies that only one person can be eligible to receive such benefits. *Cf.* A.R.S. § 38–846(C), (E) (providing benefits for eligible children). We thus hold that a former spouse is not a surviving spouse and may not collect death benefits under the statute. *See Koelsch v. Koelsch,* 148 Ariz. 176, 178, 713 P.2d 1234, 1236 (1986) ("The statute restricts death benefits to current spouses and children."); *see also Lack v. Lack,* 584 S.W.2d 896, 899 (Tex.App.1979) (interpreting a Texas pension plan and reaching a similar conclusion); *Arnold v. Department of Retirement Sys.,* 128 Wash.2d 765, 912 P.2d 463, 465 (1996) (excluding former spouses from receipt of death benefits).

### Benefits as Community Property

¶ 16 Guillermina next argues that she has a community property interest in the death benefits because they result from Raul's employment with Santa Cruz County, during which the two of them were husband and wife. Generally, all property acquired during marriage is community property, except that acquired by gift, devise, or descent. *See* A.R.S. § 25–211.[3] We have held that retirement benefits are community property to the extent that they are paid for with community funds or earned with community effort. *See Koelsch,* 148 Ariz. at 181, 713 P.2d at 1239.

¶ 17 The plan in question, which includes benefits at both the employee's retirement and death, was bought and paid for with community labor and funds. It must, therefore, be treated as community property in the absence of some showing that "the legislature in clear and unequivocal language intended to deprive the ex-spouse" of such an interest. *Koelsch,* 148 Ariz. at 180, 713 P.2d at 1238 (quoting *Haynes v. Haynes,* 148 Ariz. 191, 196, 713 P.2d 1249, 1254 (App.1984)).

¶ 18 A.R.S. § 38–846 defines the benefits payable at the death of the employee. As we have already noted, the employee may not designate a primary beneficiary. Instead, benefits are paid to his or her "surviving spouse," and thereafter to eligible children. Remaining amounts, if any, go to a residual or "refund" beneficiary that can be named by the employee. *See* A.R.S. § 38–846(B), (C), (E), and (F) (formerly subsection H); *see also supra* n. 1.

¶ 19 Survivors' benefits are paid only after the community has been terminated. The employee spouse cannot control who receives the payments and does not enjoy any part of them. The employee also may not transfer or devise his or her "share" of the asset. Thus, it has been argued, such benefits ought not be considered community property because they are entirely circumscribed by a statute limiting their payment to the then current spouse of the deceased member. *See Lack,* 584 S.W.2d at 899 ("Since the right to death benefits can never be established until the death of the participant, such benefits are not property acquired during the marriage, and, therefore, are not community property."). The legislature has determined who must receive these benefits. Raul could not designate the beneficiary, nor can we.

¶ 20 The only benefits for which the employee spouse may name a beneficiary are in the "refund" category. These consist of employee contributions to the plan that have not been paid out in the form of retirement or death benefits "at the date of death of the last beneficiary." A.R.S. § 38–846(F) (formerly subsection H). Here, Raul was or-

---

**3.** The legislature amended this statute in 1998 to exclude from community property that which is "acquired after service of a petition for dissolu-tion of marriage ... if the petition results in a decree of dissolution of marriage...." A.R.S. § 25–211.

dered in the original decree to name Guillermina as an "irrevocable beneficiary of 50% of any death benefits payable by reason of his former employment with Santa Cruz County." At some time thereafter, he designated her as a beneficiary of 50% of any refund benefits, which was all that the law allowed him to do.

¶ 21 We believe the wording of the statute deprives an ex-spouse of any right or claim to death benefits under the plan. *See, e.g., Arnold,* 912 P.2d at 470 (holding that, while death benefits have characteristics of community property, the "[Washington] Legislature's designation of the beneficiaries of the statutory death benefit supersedes characterization of the interest under community property principles"). At the time of this divorce, there obviously was no "surviving spouse" eligible to receive benefits because Raul was still alive and had not yet remarried. In fact, Ana was required to have been married to Raul for two years preceding his death in order to qualify under the plan. *See* A.R.S. § 38–846(A).

¶ 22 We think it odd that Guillermina claims a right, grounded in community property principles, to receive half of the payments made to Ana when there would have been none available but for Raul's fortuitous remarriage at least two years before he died. Even stranger is the fact that any reasonable valuation of Guillermina's community property "interest" in such death benefits would have to be measured by Ana's longevity rather than her own.

¶ 23 A community property interest should be fixed at the time of divorce. It is true that a such an interest can be contingent on events that occur after dissolution. *See Van Loan v. Van Loan,* 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977) ("That there is yet a condition to be fulfilled prior to the maturation of the right to payment of pension benefits does not in any way vitiate the firm and binding nature of the pension terms of the contract."). We are unwilling, however, to create a cognizable community interest in death benefits so uncertain that they would vest only upon the remarriage of the employee spouse followed by a minimum two year duration of that union——and would be paid only on the death of the employee spouse for the unknown lifespan of that unidentified future surviving spouse. In our view, the evaluation of such an interest would involve far too much speculation to meet any reasonable criteria for a sound judicial determination.[4]

¶ 24 We cannot subscribe to the dissent's suggestion that the court might take into account an employee's intent to remarry. That would merely add an element of subjectivity to an already wildly speculative inquiry. It would also encourage deceptive conduct and less-than-truthful testimony. We suspect that many divorcing spouses would conceal or deny remarriage plans under such circumstances.

¶ 25 We believe the intent behind this statute is to provide for current survivors of plan members, even at the expense of community property interests of former spouses. The member has no control over the benefits, except to name a refund beneficiary when there are no other surviving beneficiaries under the statute. Ana Parada is the surviving spouse under A.R.S. § 38–846, and is entitled to receive death benefits as such. Guillermina could not have reasonably expected to receive surviving spouse's benefits at the time of dissolution, and apparently knew or suspected that the divorce decree was insufficient to give her a 50% interest in them, considering the later attempted assignment (which we have determined to be void) and its incorporation into a modified divorce decree (also ineffective against Ana).

¶ 26 We reverse the trial court in this regard and vacate the opinion of the court of appeals.

---

4. One might nevertheless argue that the non-employee spouse should receive a greater share of the *retirement* benefits in order to compensate for community contributions toward the death benefits. *See Toth v. Toth,* 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997) (holding that statute requires community property to be divided "equitably," but not necessarily equally). It is difficult to see how a value can be placed on such a claim, given the contingent nature of the death benefits. In any event, we need not grapple with the issue because it was not raised at the dissolution or in the present proceedings.

CONCURRING: STANLEY G. FELDMAN, Justice, and FREDERICK J. MARTONE, Justice.

McGREGOR, Justice, concurring in part and dissenting in part.

¶ 27 I concur in much of the majority opinion. I agree that A.R.S. § 38–850 prohibits an employee from assigning death benefits and that Raul's purported assignment of death benefits to Guillermina, therefore was invalid. I also agree that Guillermina is not a surviving spouse as defined by A.R.S. § 38–846. I disagree, however, with the majority's conclusion that no cognizable community interest exists in the death benefits. Because the majority's holding deprives non-employee spouses of their right to receive an equitable share of all community property that existed at the time of dissolution, I dissent.

¶ 28 As the majority states, during their marriage, Raul and Guillermina purchased the retirement plan in question, which provided both retirement and death benefits, using entirely community funds and labor. The question, then, is whether the provision of Raul's retirement plan that permitted his subsequent spouse or qualifying children to receive death benefits constituted an asset, purchased with community funds, that had some value at the time of dissolution. If it did, Guillermina was entitled to a distribution of property that took into account the value of the asset.

¶ 29 The parties failed to submit evidence sufficient to permit the trial court to determine the value of Raul's right to provide death benefits if he left qualifying children or a surviving spouse. Despite that failure, however, it seems obvious that the community paid more for a retirement plan that included death benefits, payable to a surviving spouse or to qualifying children, than it would have paid for a plan with retirement benefits only. Moreover, the potential recovery by a new spouse if the employee spouse remarries, or to qualifying children if no remarriage occurs, certainly has value to the employee spouse. If death benefits were not available, the employee spouse would have to find other means to provide for a new spouse or qualifying children in the event of his death, whether by purchasing life insurance or by acquiring some other financial protection.

¶ 30 We must treat the *entire* plan as community property absent some indication that the legislature intended to deprive a former spouse of an interest in this community asset. *See, e.g., Koelsch v. Koelsch,* 148 Ariz. 176, 180, 713 P.2d 1234, 1238 (1986). I see nothing in the statutes governing this retirement plan that clearly indicates the legislature intended to deprive Guillermina of her interest in this community asset. I therefore would conclude that, to ensure an equitable distribution of community assets upon dissolution, the trial court should endeavor to determine the present value of the entire retirement plan, including the present value of the right to assure payment of death benefits to a surviving spouse or qualifying children.

¶ 31 The majority, while recognizing that a community property interest can be contingent on events that occur after dissolution, *see Van Loan v. Van Loan,* 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977), declines to recognize Guillermina's community interest because "the evaluation of such an interest would involve far too much speculation to meet any reasonable criteria for a sound judicial determination." Op. at ¶ 23. But recognizing that an asset is difficult to value says nothing about its character as community or separate property; it simply tells the parties that they must present adequate evidence to the trial court to permit a reasonable valuation.

¶ 32 We have previously considered the proper treatment of contingent benefits at dissolution. Although retirement plans inevitably present valuation difficulties, we held in *Koelsch,* 148 Ariz. at 181, 713 P.2d at 1239, that retirement benefits are community property to the extent they are paid for with community funds or earned with community efforts. We reached that conclusion despite the charge by some critics that "the extensive actuarial calculations that are necessary to produce a present value lump sum are expensive, speculative, and always inaccurate." *Id.* at 184, 713 P.2d at 1242. Because

it is impossible to divine the future, some risk always exists that life expectancies and/or estimates of present value may prove wrong, but we have not previously permitted that risk to justify depriving one spouse of property earned by the marital community.

¶ 33  In *Koelsch*, we did not reach the issue of how to characterize or value death benefits, *see id.* at 182 n. 5, 713 P.2d at 1240 n. 5, but now squarely confront it. Although the presence of death benefits may complicate valuation of a plan, the asset is nevertheless community property and must be taken into account at dissolution. "[W]here the community interest in the pension is fully vested and matured, the trial court should value the retirement benefits as a whole, *including the value of the survivor's benefit provision of the retirement plan,* in order to fully and fairly apportion each party's share of the retirement benefits." *Irwin v. Irwin,* 121 N.M. 266, 910 P.2d 342, 347 (Ct.App. 1995) (emphasis added).

¶ 34  Of course valuation must take into account the contingent nature of death benefits and the terms of a particular retirement plan. *Cf. Johnson v. Johnson,* 131 Ariz. 38, 42 n. 9, 638 P.2d 705, 709 n. 9 (1981) (stating the present value of nonvested pension benefits "should be discounted to reflect the possibility that rights will not vest"). Depending upon circumstances and the terms of a particular plan, the value of this asset will vary. The trial court, as it always does, should consider relevant evidence to calculate that value. For instance, if an employee spouse has no qualifying children and no plans to re-marry, the value of the right to provide death benefits may be minimal. In contrast, if an employee spouse has qualifying children or testifies he plans to re-marry immediately upon dissolution, and the spouse qualifies immediately to receive death benefits, the value may be higher. The court's decision as to the valuation of this community asset will necessarily rest on the quantity and quality of proof offered by the parties.

¶ 35  I would leave to the parties and the trial court the task of placing a value on the retirement plan, including its death benefits. In *Koelsch*, we considered the same plan at issue here and stated that when "a benefit is matured and payable, ... the method of division must be based on a determination of *present value.*" 148 Ariz. at 183, 713 P.2d at 1241 (1986) (emphasis added). That value is fixed as of the date of dissolution. In *Koelsch*, we also expressed a preference for lump sum distributions of community assets. *Id.* Under this method, the court places a present value on the retirement proceeds. The non-employee spouse is then awarded other community property to offset his or her interest in the plan. *See id.* This approach, of course, presupposes sufficient offsetting community property. If sufficient property is not available, the court may impose a lien on one spouse's separate property, if available, to secure payment of the other's share. *See* A.R.S. § 25–318.C. (West 1991). The court may also choose to distribute under the "reserved jurisdiction method" described in *Koelsch.* 148 Ariz. at 183, 713 P.2d at 1241; *see also Johnson v. Johnson,* 131 Ariz. 38, 41, 638 P.2d 705, 708 (1981). As is apparent, however, no single method is perfect; each carries with it some degree of risk.

¶ 36  The problem for Guillermina is that she provided no evidence that would have permitted the trial court to place a value on this asset. Although the monthly *retirement* benefit in this case was "matured and payable" at the time of dissolution, the record reveals no attempt to present evidence that would permit valuation of any other part of the plan. The record likewise lacks evidence from which we can determine whether the community possessed sufficient assets to offset the value of the death benefits. Rather than make those determinations, and acting on the basis of the information supplied by the parties, the trial court ordered a percentage division of Raul's monthly benefits between the two spouses, but did not expressly reserve jurisdiction in this regard. Neither party appealed that decision. See Peste v. Peste, 1 Wash.App. 19, 459 P.2d 70, 73 (1969) (prohibiting collateral attack on property settlement where there was a large disparity between the property awarded to each party, and where both parties were aware of all material facts).

¶ 37 . The failure of either party to take an appeal leaves us with an inequity we cannot now correct. At dissolution, the trial court granted Guillermina fifty percent of Raul's monthly retirement benefits, which she received, and ordered Raul to name her as "irrevocable beneficiary of 50 percent of any death benefits payable by reason of his former employment with Santa Cruz County." The only death benefits for which he could name a beneficiary were *refund* benefits, and Raul complied with the court's order. When Raul remarried he had no ability to designate the beneficiary of the surviving spouse's payments.

¶ 38 Therefore, the parties and the trial court disposed of a community asset in a specific, albeit legally ineffective, way. Rather than take an appeal from that disposition, Guillermina later attempted to obtain her interest from Ana in what is essentially a separate action to enforce a void assignment. I have no doubt that both Raul and Guillermina intended that she should recover a percentage of Raul's death benefits. The record also suggests that they both knew or suspected that the divorce decree was insufficient to give Guillermina a fifty percent interest in the death benefits, considering the later attempted assignment (which the court has found void) and its incorporation into a modified divorce decree (also ineffective against Ana). Under these circumstances, I see no basis for relief. I therefore agree that the trial court erred in granting the motion for summary judgment and that its judgment must be reversed.

Concurring: CHARLES E. JONES, Vice Chief Justice.