32 P.3d 420

Berney D. **SNYDER** and Rowena N. Snyder, husband and wife; Berney D. Snyder, as Personal Representative of the Estate of Caren Dorn Thomas, Deceased, Plaintiffs/Appellees,

v.

**TUCSON POLICE PUBLIC SAFETY PERSONNEL RETIREMENT SYSTEM BOARD**, a political subdivision of the City of Tucson, Arizona; Michael A. Thomas, Defendants/Appellants.

No. 2 CA–CV 98–0126.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 27, 2001.

Review Denied Jan. 8, 2002.

Robert Gordon Clark, Tucson, for plaintiffs/appellees.

McEvoy, Daniels & Darcy, P.C., by David A. McEvoy, Tucson, for defendant/appellant, Tucson Police Public Safety Personnel Retirement System Board

Yen, Pilch & Komadina, P.C., by Robert E. Yen and Caroline A. Pilch, Phoenix, for defendant/appellant, Michael A. Thomas.

## OPINION

DRUKE, J.

¶ 1 After we issued our opinion in this case, *Snyder v. Tucson Police Public Safety Personnel Retirementy System Board,* 198 Ariz. 239, 8 P.3d 1153 (App.1999), the supreme court granted review and remanded the case for reconsideration in light of its opinion in *Parada v. Parada,* 196 Ariz. 428, 999 P.2d 184 (2000). We have considered the facts, rationale, and holding in *Parada,* as well as the parties' supplemental briefs in this case, and with minor modification, we reaffirm our earlier decision.

¶ 2 The basic facts and procedural history are as follows. Berney and Rowena Snyder are the surviving parents of Caren Thomas, whose will devised all of her property to them. Before Caren died, a decree dissolving her marriage to Michael Thomas awarded her 21.61 percent of his retirement benefits in the Arizona Public Safety Personnel Retirement System (the pension plan or plan). *See* A.R.S. §§ 38–841 through 38–859. Caren received a monthly check for her share of the retirement benefits until her death. The personal representative of her estate then applied to the Tucson Police Public Safety Personnel Retirement System Board to have the monthly retirement benefits paid to the estate. Michael objected, and the Board denied the application. Upon administrative review,[1] the superior court granted summary judgment to the personal representative, ruling that the share of Michael's retirement benefits awarded to Caren was her separate property, citing *Koelsch v. Koelsch,* 148 Ariz. 176, 713 P.2d 1234 (1986), and was thus subject to the laws of descent and distribution. *See* A.R.S. §§ 14–2101 through 14–2907.

¶ 3 We affirmed that ruling on appeal, rejecting Michael's and the Board's arguments that the antiassignment provisions of § 38–850(C) barred Caren from devising her share of the retirement benefits to her parents and that her share was a mere expectancy and thus uninheritable. While review of our decision was pending, the supreme court decided *Parada,* which also involved this pension plan and the antiassignment provisions of § 38–850(C). The court then granted review of our decision and remanded this case for our reconsideration.

¶ 4 In his supplemental brief,[2] Michael renews his argument that Caren's testate disposition of her share of his retirement benefits is void under § 38–850(C). The relevant part of the statute provides:

Benefits ... payable under this system shall not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit, contribution, earning or credit, under the terms of the system, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, charge or otherwise dispose of any such right hereunder shall be void.

Michael asserts that, because *Parada* makes clear that the statute invalidates a purported assignment of the pension plan's death benefits, Caren's "attempted 'assignment,' 'transfer,' or 'other disposition' of the retirement benefits ... [is] likewise void." The personal representative and Caren's parents respond that *Parada* is not controlling because it concerned only the plan's death benefits, not its retirement benefits. We agree that *Parada* has limited application here, given its factual posture and underlying rationale.

¶ 5 In *Parada,* the dissolution decree awarded the wife, Guillermina, one-half of the husband's, Raul's, retirement benefits in the pension plan. Raul later remarried and then died. The surviving spouse, Ana, re-

---

1. *See* Administrative Review Act, A.R.S. §§ 12–901 through 12–914.

2. The Board did not file a supplemental brief after remand.

fused to pay Guillermina one-half of the death benefits, even though Ana had executed an assignment providing otherwise. The trial court and this court agreed that § 38–850(C) precluded Ana's assignment of the death benefits, but we held that Guillermina had an interest in those benefits to the extent that she had not received her full community share of Raul's retirement benefits. A majority of the supreme court disagreed with our holding, concluding that the language of the statute establishing the plan's death benefits, § 38–846, "deprives an exspouse of any right or claim to death benefits under the plan." *Parada,* 196 Ariz. 428,¶ 21, 999 P.2d 184, ¶ 21. But, from our reading of *Parada,* we discern nothing in the court's analysis that would suggest its conclusion also applies to the plan's retirement benefits, the only benefits at issue here.[3]

¶ 6 The court's analysis recognized that, under *Koelsch,* pensions that are "paid for with community funds or earned with community effort ... [should] be treated as community property," absent " 'clear and unequivocal language' " that the legislature intended to deprive a former spouse of his or her community interest. *Parada,* 196 Ariz. 428, ¶¶ 16, 17, 999 P.2d 184, ¶¶ 16, 17, *quoting Koelsch,* 148 Ariz. at 180, 713 P.2d at 1238. The *Parada* court found such an intent as to the plan's death benefits after reviewing the various provisions of § 38–846.

> [Under the statute,] the employee may not designate a primary beneficiary. Instead, benefits are paid to his or her "surviving spouse," and thereafter to eligible children. Remaining amounts, if any, go to a residual or "refund" beneficiary that can be named by the employee. *See* A.R.S. § 38–846(B), (C), (E), and (F)....
>
> Survivors' benefits are paid only after the community has been terminated [by death]. The employee spouse cannot control who receives the payments and does not enjoy any part of them. The employee also may not transfer or devise his or her "share" of the asset The legislature has determined who must receive these benefits....

*Parada,* 196 Ariz. 428, ¶¶ 18, 19, 999 P.2d 184, ¶¶ 18, 19 (citation omitted). The court thus determined that "the intent behind this statute is to. provide for current survivors of plan members, even at the expense of community property interests of former spouses." *Id.* at ¶ 25. It is apparent, however, that this deviation from the general rule enunciated in *Koelsch* resulted solely from the court's determination that the language of § 38–846 clearly and unequivocally demonstrates a legislative intent to deprive former spouses of their community interest in the plan's death benefits.

¶ 7 We find no similar language in § 38–845, the statute establishing the plan's retirement benefits. Section 38–845 simply states that "[a] member who meets the requirements for a normal pension and has twenty years of credited service shall receive a monthly amount which equals fifty per cent of the member's average monthly benefit compensation." The remaining provisions of § 38–845 merely set forth the methods for determining the retirement benefits of members who retire with other than twenty years of credited service and the requirements for an ordinary or accidental disability pension. The statute thus contains no clear and unequivocal language that the legislature intended to deprive former spouses of any community interest they may have in the plan's retirement benefits.[4]

¶ 8 Indeed, in *Koelsch,* which also involved this pension plan, the supreme court found "no such language" in the plan's statutory scheme. 148 Ariz. at 180, 713 P.2d at 1238. The court thus reaffirmed that the community portion of the plan was "subject to equitable division at dissolution" and declared that, upon dissolution, "each spouse receives an immediate, present, and vested separate property interest in the [community] proper-

---

**3.** The personal representative and Caren's parents concede they have no interest in the plan's death benefits.

**4.** Nor do we find any such language in those statutes related to A.R.S. § 38–845. *See, e.g.,* A.R.S. § 38–842, defining various terms found in § 38–845; A.R.S. § 38–844.01, stating when retirement benefits vest; and A.R.S. § 38–846.01, allowing for a deferred retirement allowance.

ty awarded to him or her by the trial court." *Id.* at 181, 713 P.2d at 1239. But, under *Parada,* the trial court could not award a nonmember spouse any community interest in the plan's death benefits; only his or her community share of the plan's retirement benefits may be awarded as separate property.

■ ¶ 9 We now turn to Michael's contention that § 38–850(C) precludes Caren's testate disposition of her separate property share of his retirement benefits. He argues that the statute prohibited her "from 'transferring' or otherwise 'disposing of' her rights to such future benefits by her last will and testament." But, as we previously observed in *Snyder,* this argument disregards the limited purpose of the statute—to prevent attacks on the plan by creditors.[5]

¶ 10 In *Haynes v. Haynes,* 148 Ariz. 191, 713 P.2d 1249 (App.1984), Division One of this court addressed whether the provisions of § 38–850(C) prohibited Arizona courts from treating the plan's benefits as community property. Division One concluded the provisions did not, stating: "The prohibited acts under the statute are 'anticipation, alienation, sale, transfer, assignment, charge, garnishment, execution or levy.' Clearly, these prohibitions are intended 'to protect the benefits and interest in the fund from the creditors and assignees of the member.'" *Id.* at 197, 713 P.2d at 1255, *quoting Collida v. Collida,* 546 S.W.2d 708, 710 (Tex.Civ.App. 1977).[6] Other courts have reached the same conclusion when construing comparable statutes. *In re Marriage of Hackett,* 113 Ill.2d 286, 100 Ill.Dec. 790, 497 N.E.2d 1152 (1986) (statute protects pension plan's members and beneficiaries from creditors); *Lindner v. Lindner,* 137 Mich.App. 569, 358 N.W.2d 376 (1984) (statute that exempts teacher's pension plan from execution, garnishment, attachment, or other legal process protects employee from creditors' claims); *Rice v. Rice,* 762 P.2d 925 (Okla.1988) (antiassignment

statute protects member's benefits from creditors); *Young v. Young,* 507 Pa. 40, 488 A.2d 264 (1985) (exemption statute protects pension funds from claims of member's creditors). *See also* Annotation, *Employee Retirement Pension Benefits as Exempt from Garnishment, Attachment, Levy, Execution, or Similar Proceedings,* 93 A.L.R.3d 711 (1979).

¶ 11 Division One thus determined in *Haynes* that § 38–850(C) did not apply to a nonmember spouse's claim on the pension plan because that spouse claims "not as an assignee or creditor of the member, but as an owner, under the community property laws of this state." 148 Ariz. at 197, 713 P.2d at 1255. And, although the supreme court granted review in *Haynes,* consolidating it with *Koelsch,* the court specifically agreed with Division One "that the anti-alienation provision of A.R.S. § 38–850(C) is not applicable to satisfaction of the ownership interest of the non-employee spouse." *Koelsch,* 148 Ariz. at 180, 713 P.2d at 1238.

■ ¶ 12 The question remains, however, whether § 38–850(C) applies to Caren's testate disposition of that ownership interest. Because the sole purpose of § 38–850(C) is to protect the plan from creditors' claims, *Haynes,* the statute would apply only if her estate, its personal representative, or her parents were deemed creditors of the plan. Unfortunately, neither § 38–850(C) nor the statutes establishing the plan provide a definition for the word "creditor." Under such circumstances, we use the ordinary meaning of the word found in well-respected dictionaries. *State v. Mahaney,* 193 Ariz. 566, 975 P.2d 156 (App.1999). *Webster's Third New Int'l Dictionary* 533 (1971) defines "creditor" as "any person to whom a debt is owed." *Black's Law Dictionary* 375 (7th ed.1999) provides a similar definition, "One to whom a debt is owed." So defined, we conclude that the word "creditor" does not include Caren's

---

5. We acknowledge that the supreme court stated in *Parada* that A.R.S. § 38–850(C) invalidated "the purported assignment of benefits to Guillermina," 196 Ariz. 428, ¶ 11, 999 P.2d 184, ¶ 11 (2000), but the court apparently was not called upon to address the statute's purpose and reach.

6. As noted in ¶ 4, the current version of the statute includes the prohibited acts of "pledge" and "encumbrance." We do not believe their inclusion in the statute affects or alters its purpose; they only make it more comprehensive.

estate, its personal representative, or her parents.

¶ 13 Under our probate code, an estate generally consists of all property or interests in property, such as Caren's ownership interest in the pension plan, that the decedent owns at death. *See* A.R.S. § 14–1201(16) and (41). Thus, such property becomes part of the decedent's estate by operation of law and is not a debt owed to the estate. Accordingly, Caren's estate is not a creditor of the pension plan. By the same reasoning, the estate's personal representative is not a creditor of the plan. Under A.R.S. § 14–3709(A), the personal representative has the "right" to the decedent's property and "shall take possession or control of" it. *See Estate of Nolan,* 56 Ariz. 366, 108 P.2d 391 (1940) (representative invested with title to all personal property of deceased). And, as here, the personal representative may "maintain an action to recover possession of [the] property or to determine its title." *Id.* Similarly, the devisees of a will, such as Caren's parents, are not ones to whom a debt is owed by the pension plan. Upon death, the decedent's separate property, such as Caren's interest in the pension plan, "devolves to the persons to whom the property is devised by his [or her] will." A.R.S. § 14–3101(A). Because the property passes by operation of law to the decedent's devisees, Caren's parents are not creditors or assignees of the plan for purposes of § 38–850(C).

¶ 14 For the foregoing reasons, we reaffirm our conclusion in *Snyder* that, "when the dissolution decree awarded Caren a 21.61 percent share of Michael's [retirement] benefits, that share immediately became her vested, separate property and, upon her death, was thereafter transferred by will to her parents." 198 Ariz. 239, ¶ 8, 8 P.3d 1153, ¶ 8. We also conclude that the antiassignment provisions of § 38–850(C) neither apply to nor bar Caren's testate disposition of her share of the retirement benefits. As we said in *Snyder:* "At her death, Caren's will transferred her ownership interest in Michael's [retirement] benefits to her parents. In essence, they stepped into her shoes as the owners of her share." 198 Ariz. 239, ¶ 7, 8 P.3d 1153, ¶ 7. But, based on the supreme court's decision in *Parada,* we find it necessary to modify *Snyder* by retracting our statement that Caren's share of the retirement benefits "would be paid in full even if Michael predeceased her." *Id.* at ¶ 6, 8 P.3d 1153. We now conclude that the monthly retirement benefits payable to Caren's parents will terminate upon Michael's death, just as they would had Caren, his former spouse, survived him. *See Parada.*

¶ 15 The trial court's granting of summary judgment to the personal representative and Caren's parents is therefore affirmed as modified.

JOHN PELANDER, Judge and M. JAN FLÓREZ, Judge, concur.