# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00560-CV

**Gwen Cash, Appellant**

**v.**

**Keith Lovell Cash, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. FM305065, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Gwen Cash appeals a final divorce decree, arguing that the trial court's written order was in error because it varied from the previously rendered oral ruling regarding the manner in which three assets were divided. The trial court's oral pronouncement regarding these items—Mr. Cash's disability benefits, the community tax obligations, and any undisclosed property—was more favorable to Mrs. Cash than the written order is; accordingly, Mrs. Cash asks this Court, "in the interest of justice and fairness," to reform the written order to reflect the oral ruling. Because the trial court had plenary power to modify its judgment, and its division of property in the final decree did not constitute an abuse of discretion, we affirm the judgment.

**BACKGROUND**

Following a one-day hearing, the trial court pronounced its ruling regarding the Cashes's divorce in open court on January 6, 2004. The court first announced that it was "render[ing] judgment for divorce as of today for Mr. and Mrs. Cash" and then turned to the disposition of the parties' assets, including the division of Mr. Cash's disability benefits,[1] the community income tax liability, and any item of property that was not properly disclosed. The trial court ruled as follows:

1. Related to any future payments for [Mr. Cash's] prior worker's comp claim and any future NFL supplemental disability benefits which are solely related to any lost wages of Mr. Cash during the time of the marriage, should there be any future distributions related to that issue, lost wages of Mr. Cash associated with his injury with the NFL and monies coming from either workers' comp or any disability benefits associated with those lost wages, that item is split 50/50.

   Now, if there are any NFL supplemental disability benefits or any workers' comp claim benefits that are paid related to lost wages of Mr. Cash from the date of divorce forward, those are solely awarded 100 percent to Mr. Cash.

   * * *

2. With regard to [tax] liability. . . . [Mr. Cash] will be liable for any tax liability for the years of the parties' marriage up to the year 2003. Then for the tax year 2003, the parties will file in a manner that is most advantageous to the parties so that the least amount of income taxes are paid by both parties, and the parties will equally share in any tax refund or tax liability for the year 2003. The parties will file separate tax returns for the tax year 2004.

   * * *

---

[1] Mr. Cash is a former National Football League player who suffered an injury during the course of the Cashes's marriage; he is entitled to collect disability benefits from the NFL as a result of that injury.

3. [Regarding undisclosed assets,] if you fail to disclose an asset, [] it's awarded 100 percent to the innocent party. . . .

The parties convened before the trial court again on March 24, 2004. Although there is no transcript from that hearing, the trial court's subsequent comments reflect that on March 24 the parties and their attorneys spent hours negotiating the provisions of the divorce decree and presenting argument to the court and that, when various amendments were agreed to, the judge wrote them into the document and initialed them.[2]

At the conclusion of that hearing, the trial court issued the final decree of divorce, which was in writing and dated March 24, 2004. Both parties, along with their attorneys, signed the divorce decree "approved as to form only." In regard to the three disputed items, the trial court's written decree ordered that:

1. [Mrs. Cash] is hereby awarded fifty percent (50%) of any disability benefits otherwise payable to [Mr. Cash] *from April 17, 1993 to*[3] January 6, 2004, under the Disability Plan with respect to lost wages during said marriage period and associated with any injuries sustained by [Mr. Cash] during said marriage period.

\* \* \*

---

[2] The judge said about the March 24 events that the "lawyers spent hours on this document and their clients sat in my jury room for hours reading this document, presumably, and negotiating this document . . . . [Y]ou-all spent many, many hours in my jury room and quite a bit of time in front of me, arguing. You can see my own interlineations on exhibits, my initials throughout the document, as we were changing it throughout the course of a long hearing."

[3] This italicized language appears in handwriting with the trial judge's initials next to it. This language, which represents the parties' date of marriage, replaced the words "on or after." Hence, the handwritten change altered the decree from awarding to Mrs. Cash half of any benefits payable in the future, to awarding her half of any benefits that were payable during their marriage.

3

2.  [Mr. and Mrs. Cash] shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 2003, and each party shall timely pay 50% of any deficiancies, assessments, penalities, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50% of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions.

\* \* \*

3.  If a party has failed to disclose assets or liabilities as represented above, then the party failing to so disclose is hereby designated a constructive trustee of any other asset for the benefit of the other party and, as between the parties can either agree upon the disposition of the asset or liability or until otherwise ordered by a court of competent jurisdiction in a partition or other appropriate action brought by either party.

Mrs. Cash filed a motion to modify on April 22, arguing that the written decree should be reformed to reflect the court's oral ruling regarding the division of the disability benefits, tax obligations, and undisclosed property.[4] Her motion did not espouse a single reason or cite a single authority in support of her claim that the written decree should be modified. Rather, Mrs. Cash simply pointed out the differences between the oral ruling and the written decree and stated that the latter "should be reformed" to accurately reflect the prior.

At the hearing on the motion to modify, the only justification offered by Mrs. Cash was that, despite the hours the parties spent negotiating on March 24 and despite her signature on the written decree, it was "not an agreed order" because her trial counsel[5] "did not have a complete

---

[4]  Her motion to modify also sought reformation on the issue of unpaid household expenses, but that is not at issue on appeal.

[5]  Mrs. Cash was represented by a different attorney at the hearing than she had been on March 24.

4

copy of the divorce decree for her to look at and sort of shoved the . . . signature page in front of her and said, 'Here, sign this.'" Mr. Cash countered that Mrs. Cash had hours to review the document and that her counsel had a complete copy in advance of the hearing. After noting the long negotiations that occurred on March 24 and the fact that the trial court had initialed changes in the document to reflect what the parties had agreed to on that day, the trial court denied Mrs. Cash's motion to modify.

Mrs. Cash now appeals, arguing that the trial court reversibly erred by issuing a written decree that did not correctly reflect its previous oral ruling. Importantly, Mrs. Cash does not challenge that any portion of the trial court's written decree is legally flawed;[6] rather, she asserts only that the final decree should be modified because it varied from the oral ruling. The issue on appeal, therefore, is confined to whether the trial court committed reversible error by issuing a final divorce

---

[6] The closest Mrs. Cash comes to challenging the decree's legal correctness is in regards to the disability benefits. She states that "retirement benefits are a community asset to be divided between the married parties in the event of a divorce," and complains that the court should have awarded her half of all benefits payable in the future, as was done in the oral ruling, rather than just half of any benefits payable during marriage. Yet, Mrs. Cash only cites to a case dealing with a military pension plan, *see Cearley v. Cearley*, 544 S.W.2d 661 (Tex. 1976), and provides no authority to show that the court abused its discretion by not awarding her half of any future disability payments. Trial courts are given broad discretion to determine how assets should be divided in a divorce action, which will not be disturbed absent a clear showing of an abuse of discretion. *Cook v. Cook*, 888 S.W.2d 130, 132 (Tex. App.—Corpus Christi 1994, no writ). Where there are no findings of fact or conclusions of law explaining a trial court's reasons for modifying its written decree from its oral pronouncement of the property division, as here, we are to presume that the court properly exercised its discretion. *Allen v. Allen*, 646 S.W.2d 495, 496 (Tex. App.—Houston [1st Dist.] 1982, no writ).

decree that varied from its initial oral ruling regarding the manner in which three assets were divided between the parties. Under the circumstances of this case, we find that it did not.[7]

**ANALYSIS**

A trial court retains plenary power to vacate, modify, correct, or reform its judgment at any time until the judgment becomes final, which occurs thirty days after the judgment is signed unless that time is extended by one of the parties filing a motion for new trial or a motion to modify, correct, or reform the judgment. *See* Tex. R. Civ. P. 306a (time periods run from date judgment is signed), 329b (motions for new trial and motions to modify, correct, or reform judgment extend duration of trial court's plenary power); *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993); *see also* Tex. R. App. P. 26.1 (listing other actions that extend time periods).[8] Within this time period, the trial court's power to modify its judgment has been described as "practically unlimited" or "virtually absolute." *Rogers v. Clinton*, 794 S.W.2d 9, 12 (Tex. 1990) (Cook, J., dissenting); *Cook v. Cook*, 888 S.W.2d 130, 131 (Tex. App.—Corpus Christi 1994, no writ).

Given this plenary power, it is within the trial court's discretion to issue a written decree that is modified from its oral ruling. *Mathes v. Kelton*, 569 S.W.2d 876, 877-78 (Tex. 1978); *Allen v. Allen*, 646 S.W.2d 495, 496 (Tex. App.—Houston [1st Dist.] 1982, no writ). There is no

---

[7] Mrs. Cash also raises, as an initial matter, the issue of whether she waived her right to appeal the decree by signing it "approved as to form." Although it does not affect the outcome of her appeal—because we affirm the judgment—we agree that a party who approves only the form of the judgment does not forfeit the right to appeal. *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ). Even the phrase "approved as to form and substance," standing alone, does not transform a judgment into a consent judgment. *Id*. at 766-67.

[8] Once a divorce decree becomes final, however, it is beyond the power of the trial court to issue an order that modifies the division of property. Tex. Fam. Code Ann. § 9.007(b) (West 1998).

6

requirement that the trial court hear new evidence before exercising its plenary power to modify the terms of its oral ruling. *See* Tex. R. Civ. P. 329b; *Allen*, 646 S.W.2d at 496. A trial court's oral pronouncement is often tentative and may not cover all the details of a final decree because the court is aware that a draft will be prepared and reviewed before the final, written judgment is signed. *Cook*, 888 S.W.2d at 131-32. When an inconsistency exists between the trial court's oral pronouncement at the hearing and its subsequent written order, the written judgment controls over the oral ruling. *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In *Cook v. Cook*, the Corpus Christi court of appeals addressed facts similar to those in this case. *See* 888 S.W.2d 130. In *Cook*, the trial court orally ruled that the divorce was granted and that Mrs. Cook would receive a 34.8% interest in Mr. Cook's retirement benefits. *Id*. at 130-31. The trial court subsequently held a hearing to consider the final divorce decree and the qualified domestic relations order (QDRO). *Id*. at 131. At that time, the court signed a written decree awarding Mrs. Cook a 100% interest in the benefits. *Id*. Mr. Cook filed a motion to modify, complaining that the trial court's written decree should be reformed to comport with its oral ruling, and the trial court denied it. The court of appeals affirmed the judgment, stating that

> the trial court retained plenary power over its judgment and was free to modify it, which it evidently did when the judge later signed and entered the divorce decree and QDRO. What the appellant claims to be "errors" in the written judgment are actually modifications in the terms of the judgment. Thus, the trial court did not err in signing and entering a decree that differed from the oral rendition.

*Id*. at 132.

As in *Cook v. Cook*, the trial court here retained plenary power to modify the terms of its oral ruling in its subsequently-issued written decree. Without more, this provided the trial court with sufficient discretion to modify the manner in which the disability benefits, tax obligations, and undisclosed assets should be divided. The record, however, further demonstrates that the trial court did not abuse its discretion in making these modifications because they resulted from a lengthy hearing and negotiation process between the parties, which occurred after the court's initial ruling.

## CONCLUSION

The trial court did not commit reversible error by entering a written divorce decree that modified the division of certain assets from its initial oral pronouncement because the trial court's plenary power had not expired and its property division did not constitute an abuse of discretion. Mrs. Cash's issues are overruled and the judgment is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 27, 2005

8